In re ENRON CORP., et al., Debtors.

Enron Corp., Plaintiff,

v.

Harpreet S. Arora, et al., Defendants.

Bankruptcy No. 01–16034(AJG).
Adversary No. 3–92909(AJG).

United States Bankruptcy Court,
S.D. New York.

Nov. 1, 2004.

Kronish Lieb Weiner & Hellman LLP, Ronald R. Sussman, James A. Beldner, Gregory G. Plotko, Of Counsel, New York City, for the Official Employment–Related Issues Committee of Enron Corp., et al.

Balch & Bingham LLP, W. Clark Watson, Christie Lyman Dowling, Of Counsel, Birmingham, AL, Pino & Associates, LLP, Melissa R. Gassler, Of Counsel, White Plains, NY, for James L. Noles.

John H. Bennett, Jr., P.C., John H. Bennett, Jr., Of Counsel, Law Offices of Matthew Hoffman, Matthew Hoffman, Of Counsel, Houston, TX, for Stuart W. Staley.

**MEMORANDUM DECISION AND ORDER DENYING CERTAIN DEFENDANTS MOTIONS, PURSUANT TO RULES 8(a)(1) AND 12(b)(2), (6), AND (7) OF THE FEDERAL RULES OF CIVIL PROCEDURE, MADE APPLICABLE HEREIN BY RULES 7008(a) AND 7012(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, TO DISMISS PLAINTIFF'S ACCELERATED DISTRIBUTION AVOIDANCE ACTIONS**

ARTHUR J. GONZALEZ, Bankruptcy Judge.

Before the Court are motions brought by two former employees of the debtors, seeking to dismiss the avoidance actions filed against them by Enron Corp. ("Enron"). Employee-defendant James L. Noles ("Noles") moves to dismiss: (1) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (hereinafter each rule entitled the "Rule"), made applicable herein by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (hereinafter each

rule entitled the "Bankruptcy Rule"), since the complaint failed to show that the Court has personal jurisdiction over him based upon Bankruptcy Rule 7004; and (2) pursuant to Rule 8(a)(1), made applicable herein by Bankruptcy Rule 7008(a), because the complaint has no averments that can establish personal jurisdiction over him. Employee-defendant Stuart W. Staley ("Staley") moves to dismiss: (1) pursuant to Rule 12(b)(2) because the Court lacks personal jurisdiction over him based upon Bankruptcy Rule 7004; (2) pursuant to Rule 12(b)(6) since the complaint failed to state a claim on which relief can be granted; and (3) pursuant to Rule 12(b)(7) because the complaint failed to join Enron Expat Services, Inc. ("Enron Expat") as a necessary party under Rule 19(c), made applicable herein by Bankruptcy Rule 7019.[1] In the alternative, pursuant to Bankruptcy Rule 7087 and section 1412 of title 28 of the United States Code, Noles and Staley move to transfer venue to the Southern District of Texas[2] based on "convenience of the parties" assertions. This memorandum decision will only address the motions to dismiss; the section 1412 motions will be addressed in a separate decision. Upon consideration of the parties' pleadings and arguments made at the hearings regarding Noles's and Staley's motions to dismiss, the Court denies said motions.

## I. Background

### A. *General Procedural History*

Commencing on December 2, 2001, Enron Corp. and certain of its affiliated entities (collectively, the "Debtors" or "Enron," as applicable) filed for voluntary petitions for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been procedurally consolidated for administrative purposes. As of the date hereof, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On December 12, 2001, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the Southern District of New York (the "United States Trustee") appointed the Official Committee of Unsecured Creditors of Enron Corp., *et al.* (the "Creditors' Committee") to represent the interests of all unsecured creditors of the Debtors. The Creditors' Committee has been reconstituted from time to time.

On February 21, 2002, the Court directed the United States Trustee to appoint an examiner (the "ENA Examiner") in the Enron North America Corp. Debtor case pursuant to section 1104 of the Bankruptcy

---

**1.** Subdivisions (2), (6), and (7) of Rule 12(b) of the Federal Rules of Civil Procedure provide as follows:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person, ... (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19.

Fed. R. Civ. P. 12(b)(2), (6), (7).

**2.** While Noles initially moved in his December 17, 2003 motion to transfer of venue to the Northern District of Alabama pursuant section 1412, his attorney subsequently acknowledged during the hearing on his motion that if the Court found that personal jurisdiction did not exist over him, the Southern District of Texas would be an appropriate venue based on most of his factual circumstances occurring within Texas.

Code. The Court entered an order on March 12, 2002 approving the appointment of Harrison J. Goldin as the ENA Examiner. At various intervals, the ENA Examiner filed reports concerning these cases.

On March 27, 2002, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee appointed the Official Employment–Related Issues Committee of Enron Corp., *et al.* (the "Employee Committee") in the Debtors' chapter 11 cases. The Employee Committee has been reconstituted from time to time.

The Court also directed on April 8, 2002 the appointment of an examiner (the "Enron Examiner") in the Debtors' cases pursuant to section 1104 of the Bankruptcy Code to inquire into, *inter alia,* all transactions involving special purpose vehicles or entities created or structured by or for the Debtors, and transactions not reflected on the Debtors' balance sheets or not reflected in the respective debtor's financial statements in accordance with generally accepted accounting principles. On May 24, 2002, an order was entered approving the United States Trustee's appointment of Neal Batson, Esq., as the Enron Examiner. At various intervals, the Enron Ex-

aminer filed reports concerning these cases.

During June 2004, this Court held hearings to consider confirming a plan of reorganization under chapter 11 of the Bankruptcy Code proposed by the Debtors. On July 15, 2004, the Court entered findings of fact and conclusions of law supporting confirmation of the Debtors' Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code filed on July 2, 2004 and entered an order confirming the Plan and the global compromise of inter-estate issues embodied in the motion filed by the Debtors and approving the global compromise in the event the Plan is not confirmed or does not become effective for one or more of the proponents of the Plan. The Plan provides for the disposition of all of the Debtors' assets and the distribution of value realized therefrom in accordance with the priority scheme of the Bankruptcy Code.

There have been a number of avoidance actions brought by the Creditors' Committee on behalf of the Debtors, the Employee Committee on behalf of itself, and the Employee Committee on behalf of the Debtors.[3]

---

**3.** The Court entered an order on August 28, 2002, assigning and authorizing, *inter alia,* the Employee Committee to investigate and prosecute certain avoidance actions (the "90–Day Bonus Avoidance Actions") against each Enron employee who received a significant lump sump payment from Enron, each labeled as a 90–day retention bonus (each a "Bonus" and collectively, the "Bonuses"), within days before Enron's bankruptcy filing. The beneficiaries of any recovery on such assigned actions are certain former Enron employees who entered into a settlement agreement with Enron and who were not recipients of such Bonuses.

On or about January 8, 2003, counsel for the Employee Committee mailed letters to each of the 292 Bonus recipients, demanding repayment of the Bonuses within thirty (30)

days. Each letter stated that failure to remit the Bonus in its entirety, or to produce documentation establishing a defense to the avoidability of such Bonus, within thirty (30) days would result in the institution of a lawsuit against the Bonus recipient.

In a pre-emptive effort, a group of 106 Bonus recipients filed a complaint in this Court on February 6, 2003, one or two days prior to the end of the thirty-day period of the Employee Committee's demand letter, where such recipients sought a declaration that the bonuses are not avoidable pursuant to sections 544, 547, 548, and 550 of the Bankruptcy Code (the "Declaratory Judgment Action").

In turn, beginning on March 14, 2003, the Employee Committee filed 90–Day Bonus Avoidance Actions (*see* Compls. (3/14/2003, 3/28/2003, and 4/9/2003), Adv. Proc. Nos. 03–03496, 03–03522, and 03–03598, respectively)

## B. *Accelerated Distribution Avoidance Actions*

In considering a motion to dismiss, the Court accepts as true the factual allegations in a complaint. *See Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). The allegations of Enron's complaint are as follow.

Enron and its affiliates had two active non-qualified deferred compensation plans in effect in 2001, that is, the Enron Corp. 1994 Deferral Plan, Restated as of October 6, 2000, and the Enron Expat. Services, Inc.1998 Deferral Plan, Restated as of September 1, 2001 (collectively, the "Deferral Plans"). On or about October 2001 through November 2001, there were approximately 240 to 350 participants in the Deferral Plans.

Certain qualified executive employees (known as "Top–Hat" employees) of Enron or its affiliates were permitted under the Deferral Plans to defer current earnings and, thereby, defer taxes on the amounts deferred. The Deferral Plans provided that the deferred compensation owed to Top–Hat employees was part of the general corporate assets of the Debtor and that,

with respect to benefits under the Deferral Plans, such obligations were unsecured obligations of the Enron and its affiliates.

Under the Deferral Plans, the Top–Hat employees had a right of election to accelerate deferred compensation payments subject to the consent of a committee for each of the Deferral Plans. Prior to October 29, 2001, each of the Deferral Plans did not have a standing committee; however, on such date, Kenneth Lay, Enron's then Chief Executive Officer, appointed Greg Whaley ("Whaley") as a committee of one for each of the Deferral Plans.

Between October 25, 2001 and November 30, 2001, approximately 206 Top–Hat employees made requests for accelerated deferred compensation payments. Whaley approved 126 such requests, which resulted in Enron providing accelerated distributions (the "Accelerated Distributions") between October 30, 2001 and December 5, 2001 to 113 Top–Hat employees in the cash equivalent of $53,135,993.10. The remaining Deferral Plans' participants requesting accelerated deferred compensation payments did not receive such payments.

---

against Bonus recipients in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Houston Bankruptcy Court"), where such actions were consolidated on May 8, 2003 by order of the Houston Bankruptcy Court (jointly administered under Adv. Proc. No. 03–03496). The Employee Committee also filed a motion to dismiss the Declaratory Judgment Action on March 28, 2003, on the grounds that it was improperly filed in anticipation of the 90–Day Bonus Avoidance Actions pending in the Southern District of Texas.

On August 28, 2003, this Court concluded that the 106 Bonus recipients that filed the Declaratory Judgment Action was an improper use of Declaratory Judgment Act (the "DJA"), 28 U.S.C. §§ 2201–2202, and, since it is beyond the purposes and purview of the DJA, the Court dismissed it. *See Allen v. Official Employment–Related Issues Commit-*

*tee, et al. (In re Enron Corp., et al.),* 297 B.R. 382, 390 (Bankr.S.D.N.Y.2003).

Subsequently, the Houston Bankruptcy Court issued, *inter alia,* two Memorandum of Decision on April 19, 2004 and May 24, 2004, respectively, regarding the 90–Day Bonus Avoidance Actions.

By order dated December 1, 2003, this Court also authorized, *inter alia,* for the Creditors' Committee to commence avoidance proceedings under sections 544, 547, 548, and 550 of the Bankruptcy Code against certain former insider employees of the Debtors and professional firms. On that same day, the Creditors' Committee, on behalf of the Debtors, filed actions in this Court against former Enron insider employees, seeking to avoid and recover alleged preferential and/or fraudulent transfers made by the Debtors within one year preceding the date the Debtors filed their respective bankruptcy cases.

By order dated September 23, 2003, the Court granted, *inter alia,* the Employee Committee standing and authority to commence actions (the "Accelerated Distribution Avoidance Actions") on behalf of the Debtors' estates to avoid and to recover the Accelerated Distributions that were made to Top–Hat employees under the Deferral Plans.

Accordingly, on November 14, 2003, the Employee Committee filed a complaint (the "Complaint") on behalf of Enron, seeking to avoid and to recover pre-petition and post-petition Accelerated Distributions made by Enron to Top–Hat employees in 2001, including (1) Noles, who allegedly received such a distribution on November 16, 2001, and (2) Staley, who allegedly received such a distribution on December 5, 2001.[4] (Compl., Adv. Proc. No. 03–92909(AJG))

Subsequently, Noles filed his above-referenced motion to dismiss on December 17, 2003 and Staley filed his above-referenced motion to dismiss on January 30, 2004.[5] In turn, the Employee Committee filed its opposition to Noles's motion on January 12, 2004 and to Staley's motion on February 19, 2004.[6]

## II. Discussion

### A. *Rule 8(a)(1) Is Inapplicable To Noles's Personal Jurisdiction Contention*

█ Noles contends that while Rule 8(a)(1), made applicable herein by Bankruptcy Rule 7008(a), specifically requires that the Complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends," Enron's Complaint has no averments that can establish personal jurisdiction over him. Relying on *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236 (2d Cir.1999), Noles asserts that "the plaintiff's prima facie showing, necessary to defeat jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Id.* at 240. Noles thereby argues that because Enron has failed to meet its burden of showing that it has personal jurisdiction over him, he moves pursuant to Rule 12(b)(2) to dismiss the Complaint against him.

Although the Employee Committee did not file a response to Noles's Rule 8(a)(1) contention, the Court finds that Noles overstates the requirements of the rule. Rule 8(a)(1) applies to subject matter jurisdiction, not personal jurisdiction and, therefore, Noles' Rule 8(a)(1) argument is without merit. *Stirling Homex Corp. v. Homasote Co.,* 437 F.2d 87, 88 (2d Cir. 1971) (noting that Rule 8(a)'s "term 'jurisdiction' ... refers to subject matter jurisdiction rather than personal jurisdiction."); *Curran Co. v. Imedco GmbH,* No. 91–C7938, 1992 WL 370237, at *2, 1992 U.S. Dist. LEXIS 18420, at *4 (N.D.Ill.1992) ("Rule 8(a)(1) ... only requires allegations

---

4. The Employee Committee filed additional Accelerated Distribution Avoidance Actions against other Top–Hat employees in 2003 and 2004.

5. While Top–Hat employee-defendants Gahn and Mayeux, both residing in Houston, Texas, also filed separate answers with affirmative defenses on December 17, 2003 asserting the Court lacked personal jurisdiction over them, such defendants did not file a motion to dismiss based on lack of personal jurisdiction.

6. On October 14, 2004, this Court issued an unpublished Memorandum Decision and Order in the Accelerated Distribution Avoidance Actions, which denied certain defendants' motions to transfer venue pursuant to section 1409(d) of title 28 of the United States Code. On October 25, 2004, Staley filed a motion seeking this Court's reconsideration of its October 14, 2004 Memorandum Decision and Order.

of subject matter jurisdiction in the complaint."); *see, e.g.,* 4 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.6, at 563 (3d ed.2002) (collecting cases and noting that "strictly speaking, under Federal Rule 8(a) plaintiffs are not required to plead the basis for personal jurisdiction over defendants.").

### B. *Personal Jurisdiction Exists Over Noles And Staley*

■ In his motion to dismiss Enron's avoidance action against him based on the Court's lack of personal jurisdiction, Noles concedes that this district's ruling in *J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.),* 124 B.R. 931, 942 (S.D.N.Y.1991), as well as the holdings of many other courts, is that under Bankruptcy Rule 7004(f) nationwide service of process pursuant to Bankruptcy Rule 7004(d) is sufficient to establish personal jurisdiction over any defendant in a case related to a bankruptcy proceeding. *See J.T. Moran,* 124 B.R. at 942 ("In a Chapter 11 [proceeding, the court] has nationwide jurisdiction over the defendants."). Further, Noles does not dispute that he was properly served with process and given timely and adequate notice of this adversary proceeding.

Nevertheless, Noles contends that personal jurisdiction in bankruptcy courts based on nationwide service of process is not unlimited. Noles claims that after the 1996 amendments (the "1996 Amendments") to Bankruptcy Rule 7004, the Court must consider traditional due process factors even if there has been proper service of process. Specifically, Noles asserts that while Bankruptcy Rule 7004(f) provides that service of a summons in accordance with Bankruptcy Rules can be effective to establish personal jurisdiction over a defendant, that concept is limited because, subsequent to the *J.T. Moran*

holding and other often-cited cases on the issue, the 1996 Amendments' new subdivision (f) of Bankruptcy Rule 7004 begins with the following clause: "If the exercise of jurisdiction is consistent with the Constitution and laws of the United States ...."

Based on the 1996 Amendments, Noles maintains that even if service is accomplished pursuant to Bankruptcy Rule 7004(d), the exercise of this Court's jurisdiction must still be consistent with the Constitution in order to confer personal jurisdiction. Noles contends that the appropriate analysis to apply, as stated in *R & R Hardwood v. Action Mortgage Co./Sterling Sav. Bank (In re Pond),* No. 99–00852, 1999 WL 33490237, at *3 (Bankr.D.Idaho 1999), and *HOC, Inc. v. McAllister (In re McAllister),* 216 B.R. 957, 963 n. 8 (Bankr.N.D.Ala.1998), is to determine whether the exercise of personal jurisdiction will offend "traditional notions of fair play and substantial justice" as described in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Noles specifically points out that the *McAllister* court noted that the first Constitution-related clause of Bankruptcy Rule 7004(f) "is apparently a limitation on the exercise of bankruptcy courts of in personam jurisdiction based on nationwide service of process." *McAllister,* 216 B.R. at 963 n. 8. Further, Noles asserts that the Eleventh Circuit in *Republic of Panama v. BCCI Holdings (Lux.) S.A.,* 119 F.3d 935, 945 (11th Cir. 1997), similarly recognized that personal jurisdiction asserted under a federal statute rather than a state long-arm statute does not mean that Fifth Amendment notions of fairness and reasonableness should be discarded.

Noles asserts that while the Second Circuit has not made a definitive ruling on the nexus of personal jurisdiction and nation-

wide service of process pursuant to Bankruptcy Rule 7004, he alleges that the appellate court in *Bianco v. Erkins (In re Gaston & Snow),* 243 F.3d 599 (2d Cir. 2001) (a case concerning a choice of law question, not personal jurisdiction) has left open the possibility that the rule requires a state "minimum contacts" test, rather than a federal "minimum contacts" test (also known as the "national contacts test"). Noles specifically asserts that the Second Circuit in *Gaston & Snow* noted that although the defendants had little, if any, connection to New York, they did not challenge a New York bankruptcy court's exercise of personal jurisdiction over them because they explained on appeal that they interpreted Bankruptcy Rule 7004 to require a minimum contact with the United States as a whole rather than with the forum state. *See id.* at 602.

Noles therefore argues that the Court should review its personal jurisdiction over him in accordance with traditional due process analysis regarding state minimum contacts, reasonableness and traditional notions of fair play. Citing *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.,* 264 F.3d 32, 37–38 (2d Cir. 2001), Noles contends that the test the Court should apply to determine whether or not it has personal jurisdiction over him is to a two-part analysis, that is, first review applicability of the state's long-arm statute and then analyze whether jurisdiction comports with federal due process.

In particular, Noles maintains that (1) Enron has neither alleged in the Complaint any contacts between him and New York nor has it alleged any reasonable basis for him to have expected that he would be "hailed" into this Court, and (2) even if the Court were to permit the Complaint to be amended to add such statements, such amendments would still fail applicable jurisdictional standards. Noles asserts that there are no grounds for the application of New York's long-arm statute, considering, *inter alia,* that: (1) he was employed by Enron in Texas; (2) he resided in Texas during such employment; (3) he only had two isolated contacts with New York consisting of (a) an unplanned layover at a New York airport due to mechanical problems in an airplane, and (b) meeting with a foreign potential customer at a third party's New York office, solely at the convenience of the third party; and (4) he could not have reasonably expected that issues relating to his participation in a retirement savings plan with his Texas employer would be addressed in a federal court in New York.

Even if New York's long-arm statute applies, Noles argues, citing due process reasonableness factors enumerated in *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 244 (2d Cir.1999),[7] that it is unreasonable under his circumstances to assert jurisdiction over him. In particular, Noles emphasizes that: (1) requiring him to defend himself in New York will cause a substantial burden to him in time and resources, considering (a) he returned to his hometown of Florence, Alabama after his employment with Enron in Texas, and (b) is now a retiree with only a military pension because he lost a majority of his retire-

7. The Second Circuit in *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236 (2d Cir.1999), considered the following five reasonableness factors:
(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in ob-
taining convenient and effective relief; (4) the interstate judicial's system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.
*Id.* at 244.

ment assets due to Enron's failure; (2) while the main mega-bankruptcy case is pending in New York and numerous Enron entities have sufficient cumulative ties to New York to establish venue of this case before this Court, New York nevertheless has little interest in the recovery of retirement benefits of an Alabama resident, paid to him by a Texas corporation for services performed somewhere other than New York; (3) although Enron's interest in obtaining convenient and effective relief would be to have all defendants in the Accelerated Distribution Avoidance Actions in one adversary proceeding, (a) Enron and the various committees have counsel with nationwide presence, (b) its counsel travel from New York to various locations on a regular basis, where such added travel would not significantly impact the resources available for creditors compared to his limited resources, and (c) the defendants in this adversary proceeding worked for different companies and the factual circumstances of each defendant's Deferral Plan and payment from the applicable Deferral Plan are all different, so there would be few factual issues that would overlap and create efficiency for Enron by trying the cases together; (4) given the volume of litigation pending in the Southern District of New York attributable to Enron's bankruptcy, the present adversary proceeding would more efficiently and expeditiously be litigated in Alabama; and (5) with regard to the shared interest of states in furthering social substantive policies, he submits that when a mega-corporation flounders and files for bankruptcy as Enron has, social policy is better served if former employees who have already lost jobs, savings, benefits and other assets due to the bankruptcy case are not then required to travel across the country to protect what remains.

Staley, as well, does not allege that service upon him was improper; however, he similarly moves to dismiss, asserting the Court lacks personal jurisdiction over him pursuant to Bankruptcy Rule 7004(f) because he (1) is a citizen of Houston, Texas, who is registered to vote in Houston and tries to vote in local elections there by absentee ballot, and (2) is temporarily living as a resident alien in London, England, United Kingdom.

Additionally, Staley contends that the Court's exercise of jurisdiction over him would violate the Fifth Amendment's Due Process Clause because (1) he has insufficient contacts with New York, and (2) maintenance of the suit in New York will offend traditional notions of fair play and substantial justice. Staley points out that (1) he neither did business nor lived in New York, (2) he rarely visited New York, (3) nothing in his visits to New York or in the transactions and occurrences that give rise to Enron's claims in this action gave him any notice that he might be required to appear in court in New York, (4) New York has no special interest in providing a forum for Enron to bring this action, (5) New York is not a convenient forum for him, and (6) in no way did he engage in continuous or systematic activities with New York.

In opposition, the Employee Committee maintains it is well settled that where a statute provides for nationwide service of process, such service provides a statutory basis for personal jurisdiction. The Employee Committee asserts that many courts, including the Southern District of New York, therefore have held that no inquiry into a defendant's "minimum contacts" with the forum state is required pursuant to Bankruptcy Rule 7004.

Moreover, the Employee Committee asserts that Noles's contention that the 1996 Amendments to Bankruptcy Rule 7004 require a bankruptcy court to engage in a

state "minimum contacts" analysis to determine personal jurisdiction is simply misguided. Following the 1996 Amendments, the Employee Committee notes that Bankruptcy Rule 7004 continues to provide (1) for nationwide service of process, and (2) that such service is effective to establish personal jurisdiction over a defendant with respect to (a) a case, (b) a civil proceeding, (c) arising in or related to a case, under the Bankruptcy Code. The Employee Committee claims that the 1996 Amendments made no substantive change concerning nationwide service of process or personal jurisdiction; rather, citing the 1996 Advisory Committee Notes to Bankruptcy Rule 7004(f), it merely conformed Bankruptcy Rule 7004(f) to the 1993 revision of Rule 4.

The Employee Committee also asserts that courts have affirmed the principle that Bankruptcy Rule 7004 confers nationwide personal jurisdiction in the aftermath of the 1996 Amendments. In *Warfield v. KR Entertainment, Inc. (In re Federal Fountain, Inc.)*, 165 F.3d 600, 601–02 (8th Cir.1999), the Employee Committee notes that the Eighth Circuit was presented with the issue of whether "minimum contacts" with the forum state or with the United States was required under Bankruptcy Rule 7004; the appellate court found that federal "minimum contacts" was all that was required, and pointed out that it was thereby aligning itself "with virtually every other court that has ruled on this issue." *Id.* at 601. The Employee Committee also notes that the District of Connecticut similarly held in *Michaelesco v. Richard (In re Michaelesco)*, 288 B.R. 646, 652–53 (D.Conn.2003), that, since nationwide service of process is authorized under Bankruptcy Rule 7004, "a minimum contacts analysis with the forum state in which the district court sits is unnecessary because the sovereign exercising jurisdiction is the United States, not a particular state." *Id.*

at 652. In addition, the Employee Committee asserts that, irrespective of Noles's assertion that the federal "minimum contacts" analysis employed under the Bankruptcy Code and other federal statutes is an unconstitutional due process violation, this argument was expressly rejected in *Federal Fountain*, where the Eighth Circuit opined that "certain legal principles that have enjoyed widespread acceptance for a significant period of time provide a firm foundation for the proposition that [Bankruptcy Rule] 7004(d) is a constitutional exercise of congressional authority." *Id.* at 601.

The Employee Committee further notes, *inter alia*, that Noles's reliance on *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32 (2d Cir.2001) for asserting a state "minimum contacts" test applies is misplaced because the "minimum contacts" in that case was in the context of diversity jurisdiction, not jurisdiction under a federal statute, so there was no question in that case that a state "minimum contacts" test would apply. With respect to Noles's reference to *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935 (11th Cir.1997), the Employee Committee asserts that the Eleventh Circuit held that nationwide personal jurisdiction is presumptively necessary to further statutory objectives where federal statutes provide for nationwide service of process, but that in "highly unusual cases," inconvenience caused by a plaintiff's choice of forum might still arise to a violation of due process rights. *See Republic of Panama*, 119 F.3d at 947–48. The Employee Committee, however, notes that the Eleventh Circuit gave no indication what such a "highly unusual case" might be, it found that the case before it was not such a case, and that personal jurisdiction existed based solely on nationwide service of process. *See id.*

The Employee Committee contends that Noles misleads the Court when he claims that the Second Circuit endorsed his state "minimum contacts" analysis in *Gaston & Snow*. In that case, the Employee Committee notes that the defendants conceded that New York bankruptcy court had personal jurisdiction over them despite their lack of contact with New York and the Second Circuit in no way disputed or questioned that concession. Rather, the Employee Committee asserts that the Second Circuit raised the issue only to the extent it was implicated by choice of law questions before the court, and cited cases that interpret Bankruptcy Rule 7004 to require federal, not state, "minimum contacts" analysis.

■ In sum, the Employee Committee argues that given the broad case law supporting the federal "minimum contacts" analysis and lack of any law to the contrary, this Court has personal jurisdiction over Noles so long as he has "minimum contacts" with the United States. Since Noles is a resident of the State of Alabama, the Employee Committee contends that this Court has personal jurisdiction over him.

Although Staley contends that "minimum contacts" do not exist between himself and the State of New York, the Employee Committee notes that he misconstrues the jurisdictional rules applicable to him. In particular, the Employee Committee asserts that in a federal question case, such as the avoidance against Staley under chapter 5 of the Bankruptcy Code, the relevant question for jurisdictional purposes is whether he has sufficient "minimum contacts" with the United States as a whole, not with any particular forum state.

The Employee Committee maintains that Staley has the requisite "minimum contacts" with the United States because he admits to being a citizen of Texas, Houston is his home, and remains registered to vote there. Moreover, the Employee Committee notes that the federal "minimum contacts" test in federal question cases is applicable to Staley irrespective of him residing in London, England because Article 10(a) of the Hague Convention, which is applicable to cases arising under the Bankruptcy Code by virtue of Bankruptcy Rule 7004(f), authorizes worldwide service of process.

The Court finds that it has personal jurisdiction over Noles and Staley. Contrary to Noles's suggestion that the 1996 Amendments to Bankruptcy Rule 7004(f) and Second Circuit's holding of *Gaston & Snow* provide for a state "minimum contacts" test pursuant to the rule, the Court finds that subdivision (f)'s initial clause, that is, "[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States," does not require that a state "minimum contacts" analysis be undertaken to determine personal jurisdiction in a federal question case such as this adversary proceeding under chapter 5 of the Bankruptcy Code.

After the 1996 Amendments, courts have recognized in federal question cases that no inquiry into a defendant's "minimum contacts" with the forum state is needed to exercise jurisdiction pursuant to Bankruptcy Rule 7004; rather, only a federal "minimum contacts" test is required, whereby the Fifth Amendment's Due Process Clause limits a bankruptcy court's exercise of personal jurisdiction over a defendant. *NationsBank, N.A. v. Macoil, Inc. (In re Med–Atlantic Petroleum Corp.)*, 233 B.R. 644, 653 (Bankr.S.D.N.Y.1999); *see Owens–Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.)*, 124 F.3d 619, 630 (4th Cir.1997) (reviewing the initial clause of Bankruptcy Rule 7004(f) and noting that "[o]n the topic of whether the *exercise of*

*personal jurisdiction* over [the defendant] *is consistent with the Constitution and the laws of the United States,* the question of whether [the defendant] had minimum contacts with [the forum state] is irrelevant ... because when an action is in federal court on 'related to' jurisdiction, the sovereign exercising authority is the United States, not the individual state where the federal court is sitting" and, therefore, a court "need only ask whether [the defendant] has the minimum contacts with the United States such that subjecting it to personal jurisdiction does not offend the Due Process Clause of the Fifth Amendment to the United States Constitution.") (emphasis added); *see also Federal Fountain, Inc.,* 165 F.3d at 602 (finding that a defendant in a bankruptcy-related action in federal district court had sufficient contacts with the United States to support personal jurisdiction over him by the district court and noting that Bankruptcy Rule 7004(d)'s nationwide service of process "is a constitutional exercise of congressional authority."). Specifically, the Fifth Amendment's Due Process Clause "requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with [the forum state]." [8] *Med–Atlantic Petroleum,* 233 B.R. at 653; *see generally Stafford v. Briggs,* 444 U.S. 527, 554, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (Justice Stewart, in a dissenting opinion joined by Justice Brennan, reviewing whether "traditional notions of fair play and substantial justice inherent in the Due Process Clause of the Fifth Amendment ... limit the exercise of congressional power to provide for nationwide *in personam* jurisdiction" and noting that "due process requires only certain minimum contacts between the defendant and the sovereign that has created the court."); *Medical Mut. of Ohio v. deSoto,* 245 F.3d 561, 567–68 (6th Cir.2001) (noting with regard to an ERISA nationwide service of process provision that "when a federal court exercises jurisdiction pursuant to a nationwide service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern [under the Due Process Clause of the Fifth Amendment] is whether the individual over which the court is exercising jurisdiction has suffi-

---

**8.** As noted by the Employee Committee, in *Michaelesco v. Richard (In re Michaelesco),* 288 B.R. 646 (D.Conn.2003), the district court held in a bankruptcy-related case as follows:

> [B]ecause "congressional power to authorize nationwide service of process in cases involving the enforcement of federal law is beyond question," *Mariash v. Morrill,* 496 F.2d 1138, 1143 n. 6 (2d Cir.1974), with respect to U.S. residents, constitutional due process in a federal question case requires only that the nationwide service authorized by statute is "reasonably calculated to inform the defendant of the pendency of the proceedings in order that he may take advantage of the opportunity to be heard in his defense." *Id.* at 1143. A minimum contacts analysis with the forum state in which the district court sits is unnecessary because the sovereign exercising jurisdiction is the United States, not a particular state. *See id.* Thus, exercise of jurisdiction

is justified if the defendant resides within the territorial boundaries of the United States and has been properly served.

> In a proceeding brought in the Bankruptcy Court under the related to jurisdiction of 28 U.S.C. [§] 1334(b), Fed. R. Bankr.P. 7004(d) applies, .... Accordingly, as subject matter jurisdiction under 28 U.S.C. § 1334(b) is based on a federal question— here relatedness of a proceeding to a case under Title 11—and nationwide service of process is authorized in such proceedings, several circuit courts have concluded and the holding of *Mariash* directs that whether there exists a connection between a defendant and the forum state in which the Bankruptcy Court sits is irrelevant and the personal jurisdiction inquiry should focus on whether the defendant in the proceeding resides within the United States.

> *Id.* at 652–53 (citations omitted).

cient minimum contacts with the United States."). Although Noles as a former employee of Enron in Texas and current resident of Alabama might not have the requisite minimum contacts with New York, he did not argue that he was improperly served and he clearly has sufficient contacts with the United States for the Court to exercise personal jurisdiction over him pursuant to Bankruptcy Rule 7004(f).[9]

The federal "minimum contacts" test is also valid for Staley who resides in London, England, because (1) he does not contend that service of process upon him was improper, and (2) he admits that he is a resident and an active registered voter of

Houston, Texas and, therefore, has sufficient contacts with the United States, and, even if he were not a Texas resident, the Hague Convention, which is applicable herein under Bankruptcy Rule 7004(f),[10] authorizes service of process with respect to his current residence in London.

■ Even if the Court were to adopt the Eleventh Circuit's view expressed in *Republic of Panama* that (1) "a defendant's 'minimum contacts' with the United States do not … automatically satisfy the due process requirements of the Fifth Amendment" because "there are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but still will be

---

**9.** The Court further notes that while the 1996 Advisory Committee Notes to subdivision (f) of Bankruptcy Rule 7004 specifically provide that "[t]he new subdivision (f) is consistent with the 1993 amendments to F.R. Civ. P. 4(k)(2)," and, in turn, (1) the initial clause of Rule 4(k)(2) is identical to Bankruptcy Rule 7004(f) and (2) the Advisory Committee Notes of the 1993 Amendments to Rule 4(k)(2) emphasize that the Fifth Amendment provides limitations on the exercise of personal jurisdiction under the rule, the Ninth Circuit in *In re Pintlar Corp.*, 133 F.3d 1141 (9th Cir.1998), clarified, *inter alia*, that the plain language of Bankruptcy Rule 7004(a) only incorporates certain subdivisions of the 1993 amended Rule 4, but does not include subdivision (k)'s limitations on personal jurisdiction. *Id.* at 1146; *see Anheuser–Busch, Inc. v. Paques, Inc. (In re Paques, Inc.)*, 277 B.R. 615, 632 (Bankr.E.D.Pa.2000) (noting same). The 1996 Advisory Committee Notes to Bankruptcy Rule 7004(f) state after its initial incorrect reference to Rule 4(k)(2) that subdivision (f) "clarifies that service or filing a waiver of service in accordance with this rule or the applicable subdivisions of F.R.Civ.P. 4 is sufficient to establish personal jurisdiction over the defendant." This Advisory Committee Note shows that the drafters' purpose with subdivision (f) was to incorporate the service provisions of the 1993 amended Rule 4, not to create limitations on personal jurisdiction such as under Rule 4(k)(2). *See id.*

**10.** In particular, Bankruptcy Rule 7004(f) provides that "service in accordance with … the subdivisions of Rule 4 [of the Federal Rules of Civil Procedure] made applicable by these rules is effective to establish personal jurisdiction." FED. R. BANKR. P. 7004. Rule 4(f)(1) of the Federal Rules of Civil Procedure provides that "service upon an individual … may be effected in a place not within the judicial district of the United States … by any internationally agreed means authorized by the Hague Convention …." FED. R. CIV. P. 4. In turn, Article 10(a) of the Hague Convention authorizes service of process by mail to individuals located in signatory nations outside of the United States in the absence of objections from the country of destination. *See Pavia v. Club Med, Inc.*, No. 3:97cv808, 1998 WL 229912, at *6, 1998 U.S. Dist. LEXIS 18640, at 16–17 (D.Conn. Mar. 30, 1998) (citing *Ackermann v. Levine*, 788 F.2d 830, 839–40 (2d Cir.1986)); Hague Convention, Art. 10(a) ("Provided the State of destination does not object, the present Convention shall not interfere with … the freedom to send judicial documents, by postal channels, directly to persons abroad"). Service by mail to the United Kingdom is permissible because the signatory nation has not objected to Article 10(a). *See EOI Corp. v. Medical Marketing, Ltd.*, 172 F.R.D. 133, 136–37 & n. 9 (D.N.J.1997) (noting that, while, the United Kingdom had object to subdivisions (b) and (c) of Article 10, the signatory nation did not object to Article 10(a)).

unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum," and (2) "only in highly unusual cases that inconvenience will rise to a level of constitutional concern," *see Republic of*

*Panama,* 119 F.3d at 947, the Court finds that neither Noles nor Staley have established that either of them would be "unduly" burdened or inconvenienced so as to achieve the constitutional magnitude expressed by the Eleventh Circuit.[11]

**11.** Moreover, the Court notes that a party that is subject to an avoidance action not having state "minimum contacts" with the jurisdiction in which a chapter 11 multi-debtor bankruptcy case is pending is not by itself "rare" or "highly unusual" when one considers the bankruptcy venue provisions under title 11. Although a properly venue bankruptcy case or proceeding under title 11 may be subject to transfer to another district "in the interest of justice" or "for the convenience of the parties" pursuant to section 1412 of title 28 of the United States Code, a chapter 11 debtor has a number of venue options under sections 1408 of title 28 of the United States Code that results in its case pending in a district in which the party subject to an adversary proceeding has no state "minimum contacts" with such district when the adversary proceeding is filed in the same district under 1409. Often times the location of a corporate debtor's business operations, especially in a large multi-debtor case, is not the same as the venue of its chapter 11 case because venue under section 1408(1) could be based upon a number of factors, including a "corporation's domicile [which] is generally held to be its state of incorporation." *In re FRG Inc.,* 107 B.R. 461, 471 (Bankr.S.D.N.Y.1989) (citing *Fourco Glass Co. v. Transmirra Prod. Corp.,* 353 U.S. 222, 226, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957)). Also, when one considers the additional venue options of section 1408(2) regarding affiliate case filing, the possibility of the absence of state "minimum contacts" increases. The probability of lack of state "minimum contacts" with defendants in avoidance actions as discussed above in cases like Enron and the particular circumstances of each of the movants do not establish that it would be "unduly" burdensome or inconvenient so as to reach the constitutional concern articulated by the Eleventh Circuit.

Section 1408 of title 28 of United States Code provides as follows:

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

Section 1409 of title 28 of United States Code provides as follows:

(a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.

(b) Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $ 1,000 or a consumer debt of less than $ 5,000 only in the district court for the district in which the defendant resides.

(c) Except as provided in subsection (b) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case as statutory successor to the debtor or creditors under section 541 or 544(b) of title 11 in the district court for the district where the State or Federal court sits in which, under applicable non-bankruptcy venue provisions, the debtor or creditors, as the case may be, may have commenced an action on which such proceeding is based if the case under title 11 had not been commenced.

(d) A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of

Notwithstanding this finding, Noles, Staley and other Top–Hat employee-defendants in the Accelerated Distribution Avoidance Actions can still establish cause to transfer venue pursuant to section 1412 because the Eleventh Circuit's reference in *Republic of Panama* to a person that may be "unduly burdened" is a higher standard than that would be applicable under section 1412.

Furthermore, while the district court in *Dittmann v. Dyno Nobel, Inc.*, No. 97–CV–1724, 1999 WL 727464, 1998 U.S. Dist. LEXIS 19392 (N.D.N.Y.1998) recognized that certain courts "have criticized the national contacts test for not protecting an individual's due process liberty interest in avoiding burdens of litigating in an inconvenient forum," the district court emphasized that "[a]lthough the Supreme Court has not addressed the constitutionality of the national contacts test, 'all the court of appeals that have addressed the question[, including the Second Circuit,] have applied a national contacts standard when process is served under an applicable federal service provision.' " *Id.* (citing WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.1, at 311 (2d ed.1987), *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974)). Nevertheless, the district court in *Dittmann* suggested in *dicta* that a better view of the Fifth Amendment's impact on personal jurisdictional analysis under the national contacts test is as follows:

> '[A] court may exercise [personal] jurisdiction over a defendant served under a federal nationwide service statute if the defendant has minimum contacts with the United States and maintenance of the suit would not offend fair play and substantial justice.' The second prong of this approach would consider 'the federal interests in furthering fundamental social policies, the judicial system's interest in the efficient resolution of controversies, the particular forum's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief particular the burden on the defendant.'

*Id.* at *10 n. 2 (quoting WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.1, at 331 (2d ed.1987); *Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F.Supp. 1102, 1107 (S.D.Ga.1994)). The Court declines to follow such a personal jurisdiction analysis because, *inter alia*, Noles's, Staley's and other Top–Hat employee-defendants' fairness concerns will be addressed in a separate decision on whether, pursuant to section 1412 of title 28 of the United States Code, to transfer venue because of inconvenience to such defendants.[12]

---

the debtor only in the district court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.

(e) A proceeding arising under title 11 or arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the district court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim, or in the district court in which such case is pending.

28 U.S.C. § 1409.

12. While Rule 4(k) is not applicable herein, the Advisory Committee Notes of the 1993 Amendments to Rule 4(k) similarly note that:

There also may be a further Fifth Amendment constraint in that a plaintiff's forum selection might be so inconvenient to a defendant that it would be a denial of "fair play and substantial justice" required by the due process clause, even though the defendant had significant affiliating contacts with the United States. This provision does not affect the operation of federal ven-

Therefore, the Court finds that it has personal jurisdiction over Noles and Staley pursuant to Bankruptcy Rule 7004(f) since the movants have the requisite minimum contacts with the United States to satisfy any due process concerns under the Fifth Amendment. In the alternative, even if the Eleventh Circuit's rationale in *Republic of Panama* were applicable, the Court finds that Noles and Staley have not established that under their particular circumstances it would be "unduly" burdensome or inconvenient for them so as to rise to a level of constitutional concern. To the extent that *Dittmann* suggests that the national contacts test should be coupled with something akin to a transfer of venue analysis prior to a court exercising personal jurisdiction over a defendant, the Court declines to follow such an approach.

### C. Staley Fails To Show Employee Committee Did Not State A Claim Upon Which Relief Can Be Granted

■ Staley asserts, without any additional support, that the Complaint fails to state a claim on which relief can be granted and thereby moves pursuant to Rule 12(b)(6) to dismiss the Complaint. In response, the Employee Committee notes that Staley offers no substantive arguments whatsoever in support of his conclusory assertion and, therefore, contends that he failed to meet his burden of proof with respect to a Rule 12(b)(6) motion to dismiss.

The Court agrees with the Employee Committee that Staley's unsupported assertion is insufficient to meet his burden under a Rule 12(b)(6) motion and, therefore, his motion is denied. *See Gould Elec.*

*Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000) (noting that a Rule 12(b)(6) moving defendant bears burden of showing that non-moving plaintiff has failed to state a claim for which relief can be granted).

### D. Joinder Of Enron Expat Is Unnecessary

■ Staley also moves pursuant to Rule 12(b)(7) to dismiss the Complaint for its failure to join Enron Expat as a necessary party, arguing that in (1) joinder of such entity will not deprive this Court of jurisdiction over the subject matter of the action, and (2) in the absence of such a joinder complete relief cannot be accorded among the current parties. Further, Staley argues, in the alternative, that such entity claims or may claim an interest relating to the subject of this action and is so situated that disposition of this action in the entity's absence may subject this defendant to double, multiple, or otherwise inconsistent obligations by reason of claims by such entity.

The Employee Committee counters that Enron Expat did not make the payment forming the basis for Plaintiff's claim against Staley and, thus, Enron Expat would be an improper party to join in the Complaint. In addition, the Employee Committee notes that the absence of Enron Expat from this action does not necessarily expose Staley to any risk of multiple or inconsistent obligations because Enron Expat could not sue Staley to recover the payment at issue. The Employee Committee further asserts that the absence of Enron Expat will not hinder Staley's ability to defend himself, as all of the relevant

---

ue legislation. 28 U.S.C. § 1391. Nor does it affect the operation of federal law providing for the change of venue. 28 U.S.C. § 1404, 1406. The availability of transfer for fairness and convenience under § 1404 should preclude most conflicts between the

full exercise of territorial jurisdiction permitted by this rule and the Fifth Amendment requirement of "fair play and substantial justice."
1993 Advisory Comm. Notes to FED. R. CIV. P. 4(k).

evidence is in the custody and control of Enron and/or Staley, the parties to this adversary proceeding.

The Court finds that Staley's Rule 12(b)(7) motion is without merit. First, Staley fails to offer any facts to support that Enron Expat is a necessary party. Second, Enron Expat did not make an Accelerated Distribution to Staley, where such distribution forms the basis of the Complaint against him. *See* Choyce Declaration of Pl.'s Mem. L. in Opp'n to Staley's Mot. Raising Defenses Under Rule 12(b). Moreover, contrary to Bankruptcy Rule 7019(a)(2)(i)-(ii) concerns that (i) the absence of Enron Expat will impair or impede Staley's ability to defend himself, and (ii) the absence of Enron Expat from this adversary proceeding will expose Staley to substantial risk of incurring double, multiple or otherwise inconsistent obligations, the record reflects that (1) payroll, employment and similar records pertaining to Enron Expat, and other the relevant evidence, are under the custody and control of the parties to this action, that is, Enron and/or Staley, and (2) as noted, Enron Expat itself did not make the Accelerated Distribution to Staley. *See id.* Choyce Declaration; Jones Declaration.

As stated previously, to the extent Noles, Staley, and certain other defendants in the Accelerated Distribution Avoidance Actions are seeking transfer of venue under section 1412 of title 28 of the United States Code, the Court will address such request in a separate decision.

### III. Conclusion

Based on the foregoing, the Court finds that: (1) Noles's Rule 8(a) contention is without merit; (2) personal jurisdiction exists over Noles pursuant to Bankruptcy Rule 7004; (3) personal jurisdiction exists over Staley pursuant to Bankruptcy Rule 7004; (4) Staley failed to establish that the Employee Committee did not state a claim upon which relief can be granted; and (5) Staley failed to establish joinder of Enron Expat is necessary. Therefore, for the reasons set forth herein, it is hereby:

ORDERED, that Noles's motion to dismiss pursuant to Rule 8(a) based on the Complaint allegedly having no averments that can establish personal jurisdiction over him is denied; and it is further

ORDERED, that Noles's motion to dismiss pursuant to Rule 12(b)(2) based on the Court's lack of personal jurisdiction over him pursuant to Bankruptcy Rule 7004(f) is denied; and it is further

ORDERED, that Staley's motion to dismiss pursuant to Rule 12(b)(2) based on the Court's lack of personal jurisdiction over him pursuant to Bankruptcy Rule 7004(f) is denied; and it is further

ORDERED, that Staley's motion to dismiss pursuant to Rule 12(b)(6) based on the Complaint's alleged failure to state a claim on which relief can be granted is denied; and it is further

ORDERED, that Staley's motion to dismiss pursuant to Rule 12(b)(7) based on the Complaint's alleged failure to join Enron Expat as a necessary party is denied without prejudice.