### In re TEKNEK, LLC, Debtor.

### Phillip Levey, Trustee, Plaintiff,

### v.

### Sheila Hamilton, Jonathan Kennett, Mark Rollinson, Tekena USA, LLC, and Kenham, LLC, Defendants.

Bankruptcy No. 05 B 27545.
Adversary No. 06 A 00412.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 16, 2006.

Neal Levin, Joji Takada, Freeborn & Peters, LLP, Chicago, IL, for Plaintiff/Trustee, the Respondent.

Jeffrey R. Platt, Coman & Anderson, P.C., Chicago, IL, for Defendant, the Movant.

## MEMORANDUM OPINION on "Motion to Dismiss Amended Adversary Proceeding Against Sheila Hamilton and Jonathan Kennett for Lack of Personal Jurisdiction, Forum Non Conveniens and Failure to State a Claim Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure"

JACQUELINE P. COX, Bankruptcy Judge.

Pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b)(2) and (b)(6), two citizens of the United Kingdom, defendants Sheila Hamilton and Jonathan Kennett, have filed a motion to dismiss them from the instant adversary proceeding brought by the Chapter 7 bankruptcy trustee, alleging that this U.S. Bankruptcy Court lacks personal jurisdiction over them; that the doctrine of *forum non conveniens* entitles them to a dismissal; and that the complaint fails to state any causes of action against them.

### Background and Nature of the Civil Complaint

Teknek, LLC filed a Chapter 7 bankruptcy case on July 12, 2005,[1] disclosing $73.22 in total assets and total liabilities of $3,788,609.57. Over ninety-nine percent of these liabilities, or approximately $3,779,000, belongs to a single unsecured judgment creditor, Systems Division, Inc. ("SDI"), who prevailed in a patent-infringement action. The two members of the debtor are the moving defendants: Jonathan Kennett ("Kennett") and Sheila Hamilton ("Hamilton").

The complaint sets forth the following background: Defendants Hamilton and Kennett formed the debtor Teknek, LLC in Illinois in 1996 to sell the circuitry boards, cleaning devices, and other products of the Scottish concern Teknek Electronics, Ltd. in the United States. Hamilton, as vice president, owns 15% of the debtor Teknek, LLC, while Kennett, as president, owns 85%. The Chapter 7 debtor Teknek, LLC and two of the adversary proceeding defendants, Teknek America/Kenham, LLC and Tekena USA, LLC, were each, at some point in time, U.S. distributors for one of two affiliated Scottish "Teknek" companies, the first known as Teknek Electronics and the second known as Teknek Manufacturing after a foreign insolvency proceeding for the first one. The three American "Teknek"

---

1. As it was filed prior to October 17, 2005, the case is governed by the law as it existed prior to Congress's enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8.

companies implicated in this adversary proceeding do not have parent-subsidiary relationships with other "Teknek" companies; these companies are directly and separately owned by defendant LLC members Kennett and Hamilton—with the notable exception of Tekena USA, LLC, which the four former employees of Teknek, LLC and Teknek America/Kenham, LLC own. A U.S. distributorship for the Scottish "Teknek" group of companies has operated out of Illinois using three successive Illinois limited liability companies: the Chapter 7 debtor Teknek, LLC; defendant Teknek America/Kenham, LLC; and defendant Tekena USA, LLC.

After the Chapter 7 trustee retained as special bankruptcy counsel the law firm that had represented creditor SDI in attempting to collect the money judgment, *see* 11 U.S.C. § 327(c), he filed a five-count "Verified Adversary Complaint" on January 19, 2006. The complaint named as defendants six individuals, including the movants herein, Kennett and Hamilton, as well as the two business entities carrying on the two successive U.S. distributorships for Teknek-brand products: Teknek America/Kenham, LLC and Tekena USA, LLC. The other four individual defendants are members of the limited liability company Tekena USA, LLC and former employees of the prior two distributorships.[2] Count I alleges factually and constructively fraudulent conveyances under 11 U.S.C. § 544(b) and 740 Ill. Comp. Stat. 160/5 in the form of Teknek, LLC's transfer of 1) certain tangible and intangible business assets to defendant Teknek America/Kenham, LLC and 2) large amounts of money to defendants Kennett and Hamilton; Tekena USA is alleged to be a subsequent transferee under 11 U.S.C. § 550 with respect to the first set of transfers. Count II requests that the corporate veil of the Chapter 7 debtor be pierced so that the patent-infringement judgment will be enforceable directly against Kennett and Hamilton. Count III alleges that Kennett and Hamilton received wrongful distributions of profit from a limited liability company within the meaning of 805 Ill. Comp. Stat. 180/25–30 and –35. Count IV alleges that Kennett and Hamilton breached fiduciary duties to the debtor and its creditors within the meaning of 805 Ill. Comp. Stat. 180/15–3. Count V is not at issue in this motion to dismiss.

### A. Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim

Kennett and Hamilton contend that the only interests present in this civil proceeding are those of the sole noninsider bankruptcy-estate creditor, SDI, which represents a California interest, and two citizens of the United Kingdom, Kennett and Hamilton. Illinois allegedly has no interest in this civil proceeding whatsoever. In spite of the fact that the limited liability company of which they are members is physically located in, doing business in, and organized under the laws of Illinois, Kennett and Hamilton contend that their only remotely relevant contacts with Illinois are three visits for international trade shows since 2003 and that their attendance at these shows is not at issue under any of the four counts in the civil complaint. In the two affidavits supporting this motion, the defendants include none of their member conduct with respect to the Chapter 7 debtor Teknek, LLC, apparently based on the understanding that the conduct of a limited-liability-company member is the conduct of the LLC itself. Moreover, the defendants assert that to the extent they are accused of conduct constituting the initiation and receipt of fraudulent convey-

---

**2.** The Court dismissed three of these four individual defendants in a separate ruling.

ances, they engaged in all of the planning, direction, and control of such conduct while they were in Scotland, not in Illinois. To the extent that this same conduct had effects elsewhere, they assert that those effects could only have been in California, where creditor SDI has its base, not in Illinois. Regarding the effects of their conduct in Illinois, Kennett and Hamilton further cite a federal diversity-jurisdiction case utilizing the Illinois long-arm statute and related case law for the proposition that when all of a defendant's allegedly tortious conduct occurs outside Illinois and the tort is completed in Illinois only because an economic injury transpired in Illinois, the plaintiff may establish personal jurisdiction over the defendant only if the plaintiff establishes that the defendant had an intent to affect an Illinois interest. *See Celozzi v. Boot*, 2000 WL 1141568 (N.D.Ill. Aug. 11, 2000). Since Kennett and Hamilton contend that the only economic interest affected is that of sole bankruptcy creditor SDI in California, they reason that they could not have had an intent to affect an Illinois interest and thus could not be subject to specific personal jurisdiction under Illinois law.

These arguments are based on at least three premises we will examine: that the point of reference for the grouping of minimum contacts for a civil proceeding in bankruptcy is a single state such as Illinois; that an Illinois limited liability company rendered into Chapter 7 insolvency through a defendant-member's transfers is not itself an affected Illinois economic interest; and that a business entity's protective veil shields an individual officer's conduct on behalf of that entity from inclusion among the minimum contacts aggregated for purposes of personal jurisdiction over such individual.

■ Kennett and Hamilton start with a complaint that the Chapter 7 trustee failed to affirmatively plead the allegations of personal jurisdiction. However, a complaint commencing a civil proceeding must allege the basis for subject matter jurisdiction but need not allege the basis for personal jurisdiction. Fed. R. Civ. Pro. 8(a); *Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir.2003); *In re Enron Corp.*, 316 B.R. 434, 439–40 (Bankr.S.D.N.Y.2004); *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 884 (Bankr.N.D.Ill. 2006). Only if the defendant actually challenges the federal court's personal jurisdiction must the plaintiff establish by affidavit or hearing that the court has personal jurisdiction over the defendant. *Purdue Research Foundation*, 338 F.3d at 782; *Federalpha Steel LLC Creditors Trust*, 341 B.R. at 884.

■ For a preliminary dispute over personal jurisdiction, the Court makes factual determinations in one of two ways, depending on whether an evidentiary hearing is held. "It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981). Where no evidentiary hearing is held, as in this case, the Court considers the allegations of the complaint as well as written evidentiary submissions and affidavits, if any, from both sides, *e.g., Merkel Associates, Inc. v. Bellofram Corp.*, 437 F.Supp. 612, 616 (W.D.N.Y.1977); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 904–05 & n. 3 (N.D.Ill. 2003), and the plaintiff need only demonstrate a prima facie showing of personal jurisdiction. *See generally Marine Midland Bank, N.A.*, 664 F.2d at 904; *Torco Oil Co. v. Innovative Thermal Corp.*, 730

F.Supp. 126, 128 (N.D.Ill.1989); *Celozzi v. Boot,* 2000 WL 1141568, at \*1–\*2 (N.D.Ill. Aug. 11, 2000); *Federalpha Steel LLC Creditors Trust,* 341 B.R. at 884; *Reilly v. Chambers,* 215 F.Supp.2d 759, 763 (S.D.W.Va.2002). Any conflicts between the defendant's affidavit and the complaint must be resolved in favor of the defendant; however, conflicts between each side's affidavits must be resolved in favor of the plaintiff. *YKK USA v. Baron,* 976 F.Supp. 743, 744, 746 n. 4 (N.D.Ill.1997); *Interlease Aviation Investors II (Aloha) L.L.C.,* 262 F.Supp.2d at 904–05 & n. 3; *cf. Torco Oil Co. v. Innovative Thermal Corp.,* 730 F.Supp. 126, 128 (N.D.Ill.1989). "[T]he denial of a preliminary challenge to personal jurisdiction, like the denial of a preliminary injunction, is not an automatic bar to the renewal of the motion after evidence bearing on it has been obtained by pretrial discovery or presented at trial." *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 914–15 (7th Cir.1994).

■ In personal jurisdiction litigation, one must first look to whether a particular statute or rule with the force of a statute governs personal jurisdiction in federal court. *Federalpha Steel LLC Creditors Trust,* 341 B.R. at 886–87. Then, if a particular state's long-arm statute is used by the federal law, one must look at the constitutional limitations of the relevant state's law. Finally, one must always determine whether any assertion of personal jurisdiction by the sovereign comports with the Due Process Clause of either the Fifth Amendment or the Fourteenth Amendment to the U.S. Constitution. *Celozzi,* 2000 WL 1141568, at \*4; *e.g., Interlease Aviation Investors II (Aloha) L.L.C.,* 262 F.Supp.2d at 905–06. Depending on the nature of the action and substantive law, the scope of the long-arm statute or rule, and the identity of the sovereign, these inquiries may collapse into as few as one or two inquiries. *E.g., YKK USA v. Baron,* 976 F.Supp. 743, 745 (N.D.Ill.1997).

■ The first inquiry dealing with the existence of a federal statute or a rule with the force of a statute is a necessary beginning point because the two Due Process Clauses of the U.S. Constitution are limits on American courts' authority and not sources of it, *e.g., Celozzi v. Boot,* 2000 WL 1141568, at \*3–\*4 (N.D.Ill. Aug. 11, 2000), and notably, a pure federal common law of personal jurisdiction—even for federal-question cases—does not exist. *See generally United Rope Distributors v. Seatriumph Marine Corp.,* 930 F.2d 532, 534–35 (7th Cir.1991) (citing *Omni Capital International, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)). Furthermore, the affirmative authority for a federal court's personal jurisdiction over a defendant must originate in a legislative creation. *Id.*

■ In an adversary proceeding pending in a U.S. bankruptcy court as part of a bankruptcy case under Title 11, the rule-based provision applicable to the step-one question is Bankruptcy Rule 7004. "The Bankruptcy Rules were promulgated by the Supreme Court pursuant to authority granted by Congress in 28 U.S.C. § 2075. As such, the Rules have the force of law." *In re Brooks Fashion Stores,* 124 B.R. 436, 440 (Bankr.S.D.N.Y.1991). The first provision relevant to this discussion provides as follows:

(f) Personal jurisdiction

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule ... is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the [Bankruptcy] Code or a civil proceeding arising under the Code, or

arising in or related to a case under the Code.

Fed. R. Bankr.Pro. 7004(f); *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 887 (Bankr.N.D.Ill.2006) (describing 7004(f) as a "worldwide service of process" provision); *compare* Fed. R. Civ. Pro. 4(k)(2) (parallel provision for federal-question-jurisdiction cases involving foreign defendants). In order to serve process "in accordance with this rule," the plaintiff in turn looks to another subsection of the same rule to find the specific method of service of summons for a particular type of defendant, including foreign defendants. *See, e.g.,* Fed. R. Civ. Pro. 4(f); Fed. R. Bankr.Pro. 7004(a). By delineating the geographical scope of the summons, the following provision further indicates the intended center of gravity for the personal jurisdiction extended to federal courts under Bankruptcy Rule 7004:

> (d) Nationwide service of process

> The summons and complaint and all other process except a subpoena may be served anywhere in the United States.

Fed. R. Bankr.Pro. 7004(d). Because of either (d) or (f) of Rule 7004, federal courts hold that in order to determine whether a defendant is constitutionally amenable to service of process in an adversary proceeding in bankruptcy, the federal bankruptcy court's assertion of personal jurisdiction need only satisfy the Fifth Amendment to the U.S. Constitution, which in turn requires that the defendant has satisfied the minimum-contacts tests with respect to the United States as a whole (i.e., with respect to the sovereign of which the court is an extension).[3] *Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 440, 442, 444–46 & n. 8 (Bankr.S.D.N.Y.2004); *Federalpha Steel LLC Creditors Trust*, 341 B.R. at 887–88; *North v. Winterthur Assurances (In re North)*, 279 B.R. 845, 851–53 (Bankr.D.Ariz.2002) (relying on Rule 7004(d) nationwide service of process for the "national contacts" test), *reversed and remanded on other grounds*, 2003 Bankr.LEXIS 829 (9th Cir. BAP 2003); *see also Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996) ("When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States."); *Kohler Co. v. Titon Industries*, 948 F.Supp. 815, 820 (E.D.Wis.1996) ("And, of course, the national contacts test is applied when a federal statute provides for national or worldwide service."); *cf. Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945–48 (11th Cir.1997). *But cf. Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 440 (Bankr.S.D.N.Y.2004) (mistakenly referring to an avoidance proceeding before the U.S. bankruptcy court by virtue of Chapter 5 of the Title 11, and not before the U.S. district court, as an action arising under federal-question jurisdiction rather than one arising under § 1334(b) bankruptcy jurisdiction, but nevertheless correctly applying the Fifth Amendment na-

---

**3.** By comparison, in some federal-question cases between two U.S. citizens, federal district courts will still apply the state's long-arm statute, as limited by the Fourteenth Amendment and the related state-wide minimum contacts, to the U.S. defendant, *Kohler Co. v. Titon Industries*, 948 F.Supp. 815, 820–21 (E.D.Wis.1996), though the practice of not utilizing the Fifth Amendment in any federal-question case has been questioned, *United Rope Distributors v. Seatriumph Marine Corp.*, 930 F.2d 532, 535–36 (7th Cir.1991); *Schwinn Plan Comm. v. AFS Cycle & Co. (In re Schwinn Bicycle Co.)*, 192 B.R. 461, 470–71 (Bankr.N.D.Ill.1996).

tional-contacts test). Because subject matter jurisdiction in the present proceeding is based on the federal-bankruptcy-jurisdiction statute, 28 U.S.C. § 1334(b)—not on diversity of citizenship (§ 1332(a)) or the existence of a federal question (§ 1331)—any question under the state constitution and long-arm statute drops out completely, *Schwinn Plan Comm. v. AFS Cycle & Co. (In re Schwinn Bicycle Co.),* 192 B.R. 461, 471 (Bankr.N.D.Ill. 1996), and a bankruptcy court performs a single minimum-contacts analysis under the Fifth Amendment to determine whether the defendant is amenable to service of process in the United States. *See Lone Star Indus. v. Compania Naviera Perez Companc (In re New York Trap Rock Corp.),* 155 B.R. 871, 889 (Bankr.S.D.N.Y. 1993) ("Had Congress wanted to do away with the inquiry as to the amenability of a foreign party to service of process, Congress would have enacted Rule 7004(d) so as to allow worldwide service of process rather than nationwide service of process."), *affirmed,* 160 B.R. 876 (S.D.N.Y. 1993), *affirmed in part, vacated in part on other grounds,* 42 F.3d 747 (2nd Cir.1994). *Contra Brooks Fashion Stores,* 124 B.R. 436, 440 (Bankr.S.D.N.Y.1991) (concluding that the nationwide-service-of-process standard from Bankruptcy Rule 7004(d) means that no minimum-contacts test applies—not concluding that Fifth Amendment standards for two American entities would be satisfied easily). Kennett and Hamilton did not correctly identify and apply the national-contacts test under the Fifth Amendment. Because the defendants Kennett and Hamilton have not challenged personal jurisdiction on the basis of any supposed defects in the actual service of process or the method utilized but challenge their amenability to service of process, this is the only inquiry.

Traditionally, the minimum-contacts analysis under the federal constitution has two components: 1) whether the defendant has reached out to the sovereign's jurisdiction by purposely establishing sufficient minimum contacts with that forum to have availed himself of the privileges and protections of conducting activities within the forum and 2) whether any jurisdiction asserted on account of the minimum contacts comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 108–16, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *YKK USA v. Baron,* 976 F.Supp. 743, 745–46 (N.D.Ill.1997); *Federalpha Steel LLC Creditors Trust,* 341 B.R. at 887–88. Federal courts apply the same "minimum contacts" test under both the Fifth and Fourteenth Amendments, the only practical difference being the geography to which the minimum contacts are connected. *In re Federalpha Steel LLC,* 341 B.R. at 887 n. 11 & 888 n. 12. Under the Fifth Amendment, though, federal courts have debated whether the second part of the test should even remain, the statutory venue provisions of Title 28 being adequate to locate the particular district that would be the site of the most efficient, fair, and logical place to conduct a trial within the U.S. forum. *Cf. United Rope Distributors v. Seatriumph Marine Corp.,* 930 F.2d 532, 534 (7th Cir.1991) (dicta); *Enron Corp. v. Arora (In re Enron Corp.),* 316 B.R. 434, 442, 446–49 (Bankr.S.D.N.Y.2004), *with Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 945–48 (11th Cir.1997); *see generally Federalpha Steel LLC,* 341 B.R. at 888 n. 12. That debate at times involves situations where a plaintiff sues a U.S. citizen and domiciliary in a federal

district that is far from that defendant's base, but since the large forum of the sovereign easily encompasses the defendant's domicile, the minimum-contacts test is automatically satisfied. *E.g., Republic of Panama,* 119 F.3d at 945–48; *Enron Corp.,* 316 B.R. at 440, 442, 446–49 & n. 8. The better approach when dealing with a non-U.S. citizen for a defendant is to continue to apply the second part of the traditional "notions of fair play and substantial justice" analysis. *See, e.g., Federalpha Steel LLC,* 341 B.R. at 889–90 & n. 12; *Ace Pecan Co. v. Granadex Int'l Ltd. (In re Ace Pecan Co.),* 143 B.R. 696, 701 (Bankr.N.D.Ill.1992).

### 1. Aggregation of an LLC's Members' Minimum Contacts

 Kennett and Hamilton's opposition to personal jurisdiction is based primarily on the assumption that whatever business they conducted on behalf of the debtor Teknek, LLC in Illinois would count only as the minimum contacts justifying personal jurisdiction over the debtor, which is not contesting personal jurisdiction; the corporate shield having siphoned off all of their business contacts, they are left with a few, *de minimis* personal contacts that are insufficient to meet the minimum standards and are unrelated to the causes of action on which the trustee is suing them. The real issue, then, is what conduct may be aggregated against Kennett and Hamilton as individuals and what conduct, if any, counts only for asserting personal jurisdiction over the Chapter 7 debtor Teknek, LLC (which is not contested). The Supreme Court answered this question:

Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. *See Rush v. Savchuk,* 444 U.S., at 332, 100 S.Ct., at 579 ("The requirements of *International Shoe* ... must be met as to each defendant over whom a state court exercises jurisdiction"). In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.

*Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). While *Calder* indicates that a company's contacts with a forum that are independent of an individual employee's contacts with the same forum are not to be aggregated against the individual employee for purposes of the minimum-contacts analysis, it simultaneously indicates that for purposes of specific personal jurisdiction, the conduct in which the individual employees personally and actually engage as part of their employment duties does count against them in spite of the fact that they engaged in the activities as employees of a business entity. In other words, the shield of the corporation is not a defense if an employee is the corporation's "primary participant" in a course of allegedly tortious conduct in a foreign forum that the employee should know will have significant effects in the forum asserting the long-arm personal jurisdiction.[4] *See id.,* 465 U.S. at

4. Some federal courts once questioned whether personal jurisdiction over a corporation could constitutionally result in personal jurisdiction over a corporate agent who committed a business tort outside the forum jurisdiction in which the ultimate injury occurred but who had no other "independent personal contacts" with such forum. *Merkel Associates v. Bellofram Corp.,* 437 F.Supp. 612, 619 n. 3, 620 (W.D.N.Y.1977). This line of authority is

789–91, 104 S.Ct. 1482; *cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Under the U.S. Constitution it is permissible to re-count (or bootstrap) the contacts of a corporation and the relevant individual when performing the analysis for each; what is important is that in attributing any business conduct to the individual, such person must have been actually engaging in or controlling the double-counted activity. *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1064–65 (4th Cir.1983) (referring to "direct personal involvement" standard); *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417–19 (10th Cir.1996); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 908–10 (N.D.Ill.2003) (stating that imputation of corporate contacts would not be permitted unless the stockholders controlled, dominated, supervised, or directed the contacts at issue); *cf. Burger King Corp.*, 471 U.S. 462, 479 & n. 22, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ When a federal court asserts personal jurisdiction against two members of a limited liability company with *only* two members and a handful of employees, virtually all of the significant planning, acting, directing, and masterminding will be attributable to one member, the other, or both, making them the "primary participants." The nonprevailing reporter and editor being sued for libel in *Calder*, for instance, were at least able to credibly argue that they could not control the National Enquirer's marketing activity resulting in wide circulation in the California forum. *See Calder*, 465 U.S. at 789, 104 S.Ct. 1482. The members or shareholders

of a company with a smaller, narrower base of ownership and control compared to the National Enquirer cannot easily argue lack of control over company conduct.

■ Although they do not correctly identify it as such, the foreign defendants' opposition to personal jurisdiction in this matter essentially amounts to an assertion of what is known as the fiduciary shield doctrine. This doctrine, though, is a discretionary, equitable doctrine certain states have employed to limit their jurisdictional reach under their state constitutions and long-arm statutes. *E.g., Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2nd Cir.1981) (recognizing doctrine under New York's long-arm statute); *Merkel Associates v. Bellofram Corp.*, 437 F.Supp. 612, 618–20 (W.D.N.Y.1977) (same); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 135 n. 20 (N.D.Ill.1989) (same); *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316–18 (1990) (recognizing doctrine "under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts"); *Mergenthaler Linotype Co. v. Leonard Storch Enterprises*, 66 Ill.App.3d 789, 23 Ill.Dec. 352, 383 N.E.2d 1379, 1385 (1978) (interpretation of Illinois long-arm statute); *see also Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912–13 (7th Cir.1994) (applying doctrine using Illinois law in a diversity case). It is not, however, a limitation imposed by federal constitutional law, *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 n. 3 (2nd Cir.1981); *Balance Dynamics Corp. v. Schmitt Industries*, 204 F.3d 683, 697–98 (6th Cir.2000); *Columbia Briargate Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052, 1055–65 (4th Cir.1983); *Kinetic Instruments v. Lares*, 802 F.Supp.

not consistent with the subsequent *Calder* line looking merely at the foreign effects of a defendant-employee's direct personal involvement or primary participation in the business's tort.

976, 981 n. 2 (S.D.N.Y.1992) (citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804); *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies*, 833 F.Supp. 437, 442 (D.Del.1993) (same); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 135 n. 20 (N.D.Ill.1989), which is what we are dealing with in the present proceeding.[5]

5. Assuming *arguendo* that it would apply in the case at bar, this doctrine says that when personal jurisdiction is proper over some business entity, the underlying jurisdictional contacts of individual corporate employees or agents are not sufficient to establish additional personal jurisdiction over the individuals who were merely representing the business entity in the forum when it engaged in whatever conduct created the basis for long-arm specific personal jurisdiction. *YKK USA v. Baron*, 976 F.Supp. 743, 747 (N.D.Ill.1997); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 912–13 (N.D.Ill.2003). The scenario of greatest concern under this doctrine is one in which an employee or officer of a corporation merely followed his employer's orders in carrying on corporate business and did so for the employer's benefit, not his own direct benefit or personal interests, but he nevertheless finds himself forced to personally defend in a distant forum. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2nd Cir.1981); *Vanguard Airlines*, 262 F.Supp.2d at 912–13; *YKK USA v. Baron*, 976 F.Supp. at 747; *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 134–35 (N.D.Ill.1989); *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316–18 (1990). The application of the doctrine, being based entirely on equitable principals, is discretionary. *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. at 135.

The corollary to the rule is that an individual defendant's behavior that is also motivated by self-interest is not protected activity. *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. at 135–36; *Vanguard Airlines*, 262 F.Supp.2d at 912–13. The more an individual corporate defendant was carrying out orders and duties, and the less he exercised personal discretion and interest in creating the relevant contacts, the more likely it is that a court will find a foreign individual defendant entitled to a fiduciary shield from personal jurisdiction. *Vanguard Airlines*, 262 F.Supp.2d at 912–13. Being a director, officer, or member of management does not alone put a defendant within the corollary, though it most certainly puts him near or on the line. *Vanguard Airlines*, 262 F.Supp.2d at 912–13. Having a significant shareholder interest sufficient to create a direct financial stake in corporate business will definitely trigger the corollary and remove the shield protection. *Id.*

In addition to this corollary, one of the state-law exceptions to the doctrine is the "alter ego exception." *Torco Oil Co.*, 730 F.Supp. at 135–36; *Baron*, 976 F.Supp. at 744, 747. The exception permits the individual corporate defendant to be roped in with personal jurisdiction if the plaintiff makes a *prima facie* showing on only the second of the two elements required to pierce a corporate veil under state law: that the corporate form is a shell or a sham rather than a real, separate entity. *Torco Oil Co.*, 730 F.Supp. at 136–37; *Baron*, 976 F.Supp. at 747; *see also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981). Among other things, the trial court will examine whether the alleged alter ego of a debtor corporation commingles the corporation's assets or otherwise treats them as his own; it further examines whether the debtor corporation was undercapitalized, taking into account later withdrawals of capital and asking whether, in light of the business being done and the accompanying risk of loss, the "capital [was] reasonably adequate for prospective liability." *Torco Oil*, 730 F.Supp. at 136–39 & n. 22. It will further examine whether the individual officers or shareholders depleted the business entity of assets and whether they created unexplained adjustments in financial statements. *Baron*, 976 F.Supp. at 746–47.

Yet another exception exists for fiduciaries of debtor corporations that are insolvent. *Torco Oil*, 730 F.Supp. at 135 n. 21.

As vice-president and 15% owner of the debtor, Hamilton may or may not be entitled to the protection, depending on the equities of the case. *Vanguard Airlines*, 262 F.Supp.2d at 912–13. As president and 85% owner, Kennett most certainly would not receive the state-law protection as a threshold matter. *Id.*

Defendants Kennett and Hamilton aggregately received $722,967 in profit distributions and returns of capital during the year prior to the patent-infringement judgment,

Even with the bootstrapping permitted under the U.S. Constitution, the analysis for specific personal jurisdiction must focus on the nexus between the particular defendants, the nature of the conduct and "activities" in which they actually engaged whether or not pursuant to a corporate or employment obligation, the legal nature of the cause of action, and the forum asserting jurisdiction *See Calder v. Jones*, 465 U.S. at 788–89, 104 S.Ct. 1482; *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 319–21, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *YKK USA v. Baron*, 976 F.Supp. 743, 745 (N.D.Ill.1997). Specific personal jurisdiction may exist in situations in which the cause of action recognized by the forum stems from entirely foreign conduct that merely has "effects" in the forum at issue. *See Calder v. Jones*, 465 U.S. at 785–86 & n. 4, 789, 104 S.Ct. 1482. The nature of the cause of action helps one to focus not just on the types of contacts that would count for purposes of the minimum-contacts analysis but also in particular on whether those same contacts are ones that would, under the governing substantive law, subject an individual officer, director, or shareholder to potential liability in spite of a corporate or other business-entity form, *e.g., Lawlor v. Scheper*, 232 S.C. 94, 101 S.E.2d 269, 271 (1957) (an agent of a principal is personally liable for his own torts, such as fraud, in spite of acting on behalf of the principal and within the scope of the agency, as legal duties of particular people to third parties are outside the scope of veil protection). In *Cald-*

er, for example, the tort law governing libel actions potentially rendered a reporter for the National Enquirer liable in a foreign state because he researched and published an allegedly false article about the plaintiff's life in such foreign state, while his employment by the Enquirer was apparently not material to the question of his having to appear abroad to answer for individual liability. Moreover, the fact that the *Calder* defendant had never actually stepped foot in the foreign state to prepare the article was not determinative of whether the emotional and financial effects he had personally directed into that jurisdiction were sufficient to implicate both the underlying tort law of libel and invasion of privacy and the reasonable expectation that he could be haled into court there based on the same. *See Calder v. Jones*, 465 U.S. at 785–86 & n. 4, 104 S.Ct. 1482; *see also Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 134 n. 18 (N.D.Ill.1989) (foreign defendant was the primary participant directing allegedly fraudulent representation at plaintiff residing in forum). Thus, when speaking of "contacts," it ought to be clear that we are not necessarily talking about direct physical contacts between a defendant and a forum. *Heritage House Restaurants v. Continental Funding Group*, 906 F.2d 276, 283 (7th Cir.1990) ("[The defendant] created a relationship which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction."); *see also Burger King Corp.*

which left the Chapter 7 debtor both insolvent and undercapitalized (and in Chapter 7). Therefore, even if the "fiduciary shield" doctrine were a component of federal law, which it is not, Kennett and Hamilton might not be entitled to it, as the plaintiff herein appears to make *prima facie* showings of more than one exception.

If any of the "fiduciary shield" exceptions apply, or if the Court does not find in favor of

the individual corporate defendants for various equitable reasons, including self-interest, the bootstrapping (or double counting) of corporate defendant contacts and individual defendant contacts would be permitted anyway under the Illinois Constitution, *Torco Oil Co.*, 730 F.Supp. at 128, 136; *Baron*, 976 F.Supp. at 745, 747–48, just as it is under federal constitutional standards after *Calder*.

*v. Rudzewicz,* 471 U.S. 462, 476, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ Not only is the physical quality of a contact a low barrier for constitutional analysis but the frequency of the contact may also be a minor threshold when it has a strong connection to the cause of action. "Even a single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact," *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 419 (10th Cir.1996) (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)), and when such single contact "represent[s] a deliberate affiliation with the forum that renders foreseeable the possibility of being haled into court in the United States at least as to those specific contacts," *id.* See also *Burger King Corp.,* 471 U.S. at 475 n. 18, 105 S.Ct. 2174.

### 2. Application of the Test for Minimum Contacts With the United States Forum

In Counts I through IV, we must look at the substantive law on which the plaintiff relies and compare that law to Kennett and Hamilton's contacts with the U.S. forum, asking whether the contacts were related to effects within the forum that these laws were designed to prevent. Although we could go through an elaborate survey of Kennett and Hamilton's connections with this forum through the debtor, we need focus on one discrete set of uncontroverted facts: Kennett and Hamilton established a limited liability company in Illinois, used that entity to generate profits, used American banks as the focal point for those funds, and then transferred all such funds through this focal point to themselves individually,[6] leaving the limited liability company within the U.S. forum with virtually no money or assets to satisfy its creditors as disclosed in the bankruptcy-petition schedules. That is, the initiation and acceptance of an LLC-member distribution from a company located in the U.S. forum is an act connected to such forum. As such, this simple, straightforward act also relates to the substantive Illinois tort laws cited in Counts I through IV in the following ways.[7]

■ Count I alleges factually and constructively fraudulent conveyances under 11 U.S.C. § 544(b) and 740 Ill. Comp. Stat. 160/5 in the form of large amounts of cash transferred to defendants Kennett and Hamilton. The former provision permits

---

**6.** The debtor's 2003 K–1 income-tax filing indicates that Hamilton received $154,138 and Kennett received $568,829 for the fiscal year ending May 31, 2004. *See* Ex. E & F, Defendants' Motion to Dismiss Amended Adversary Proceeding. The patent-infringement verdict ensued in July 2004.

**7.** Generally speaking, under Illinois law a tort is a breach of a duty causing injury to the plaintiff, and the "situs of the tort is the place where the injury occurs." *Mergenthaler Linotype Co. v. Leonard Storch Enterprises,* 66 Ill. App.3d 789, 23 Ill.Dec. 352, 383 N.E.2d 1379, 1384 (1978). Based in part on the same nexus-creating facts, Counts I, III, and IV (which allege fraudulent conveyances, wrongful LLC distributions, and breaches of fiducia-

ry duty, respectively) each allege a tort causing injury in the United States. Though based on the same nexus-creating facts, Count II requests the piercing of the debtor limited liability company's veil, which is technically a request for an equitable remedy rather than an allegation that the defendant committed a tort. *Fontana v. TLD Builders,* 362 Ill.App.3d 491, 298 Ill.Dec. 654, 840 N.E.2d 767, 775–76 (2005), *appeal denied,* 219 Ill.2d 564, 303 Ill. Dec. 832, 852 N.E.2d 239 (2006); *see also International Financial Services Corp. v. Chromas Technologies Canada,* 356 F.3d 731, 735–38 (7th Cir.2004) (same conclusion when Illinois substantive law viewed in light of federal procedural law of jury trials).

the trustee to step into the shoes of a creditor who could have avoided a fraudulent transfer of a debtor's assets, had no bankruptcy case been filed, by use of the following state law:

Uniform Fraudulent Transfer Act: Transfer or obligation fraudulent as to creditor—Claim arising before or after transfer

§ 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 Ill. Comp. Stat. 160/5 (2004). The law is designed to prevent transfers with an intent to hinder or delay creditors and transfers for little or no consideration at a time when the debtor ought to believe that it will not be able to pay its obligations when they become due. Kennett and Hamilton's mere act of causing a withdrawal of money from a limited liability company operating in the forum is a contact, the potential effects of which this law was designed to prevent. This minimum contact contributed to the debtor's filing the Chapter 7 case at bar, as the debtor's liabilities included a $3 million judgment offset by a mere $73.22 left to pay it; in other words, the minimum contact contributed to the debtor's balance-sheet insolvency. Moreover, this single minimum contact contributed to the debtor's ability to avoid paying the same judgment; was a transfer to insiders; coincided with a pending lawsuit and eventual jury verdict; and—being a distribution/dividend as opposed to a salary payment or loan repayment—may have been in exchange for less than reasonably equivalent value. That is, the single contact had a cognizable role in transfers that were allegedly both constructively and actually fraudulent. *Cf.* *International Shoe*, 326 U.S. at 321, 66 S.Ct. 154 ("The activities which establish its 'presence' subject it alike to taxation by the state and to suit to recover the tax."). For these reasons, then, a nexus between the above statute and Kennett and Hamilton's initiation and receipt of LLC-member distributions exists, establishing the basis for specific personal jurisdiction. The same factual basis and set of legal assertions in Count I likewise state a claim upon which relief could be granted within the meaning of Federal Rule 12(b)(6).

Count II requests that the veils of the LLC debtor be pierced. "To ignore a corporation's existence—a drastic step—there must be both (1) such a unity of interest and ownership that the separate personalities of person and corporation no longer exist, and (2) circumstances under which adherence to the fiction of corporate separateness would promote injustice or inequity." *Schechter v. 5841 Bldg. Corp. (In re Hansen)*, 341 B.R. 638, 643 (Bankr.N.D.Ill.2006) (citing *International Fin. Servs. Corp. v. Chromas Techs. Canada*, 356 F.3d 731, 736 (7th Cir.2004)). The first element is synonymous with asking whether the corporation is in fact a shell or a sham. When adjudicating this question under Illinois corporate law, courts consider the following criteria: "(1)

the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own." *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565, 570 (7th Cir.1985). Kennett and Hamilton's single contact of withdrawing substantial distributions from the LLC debtor as its members, leaving it insolvent and without funds to pay its creditors, bears upon the issue of whether the defendants treated the assets of the debtor as their own and whether they left it undercapitalized in anticipation of a judgment. To the extent that this single contact supports an inference of an alleged factually fraudulent conveyance as described above in Count I, it also implicates the second element necessary for recovering on this second count: a showing that adherence to the fiction of corporate separateness would promote injustice or fraud. Thus, a nexus between Kennett and Hamilton's conduct directed to the U.S. forum and Count II exists. The same factual basis and set of legal assertions in Count II likewise state a claim upon which relief could be granted within the meaning of Federal Rule 12(b)(6).

At this point, we will skip to Count IV. Count IV alleges that Kennett and Hamilton breached fiduciary duties to the debtor (and to its creditors) within the meaning of 805 Ill. Comp. Stat. 180/15–3:

§ 15–3. General standards of member and manager's conduct.

(a) The fiduciary duties a member owes to a member-managed company and its other members include the duty of loyalty and the duty of care referred to in subsections (b) and (c) of this Section.

(b) A member's duty of loyalty to a member-managed company and its other members includes the following:

(1) to account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity;

(2) to act fairly when a member deals with the company in the conduct or winding up of the company's business as or on behalf of a party having an interest adverse to the company; and

(3) to refrain from competing with the company in the conduct of the company's business before the dissolution of the company.

(c) A member's duty of care to a member-managed company and its other members in the conduct of a winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

(d) A member shall discharge his or her duties to a member-managed company and its other members under this Act or under the operating agreement and exercise any rights consistent with the obligation of good faith and fair dealing. 805 Ill. Comp. Stat. 180/15–3 (2004). The trustee, as representative of the estate of Teknek, LLC, can also step into the shoes of the debtor and bring any and all causes of action held under this section to the extent that the debtor's members violated the above duties. 11 U.S.C. § 323, § 541(a), & § 704(1)-(2). The duties Kennett and Hamilton owed the debtor included the duty of loyalty to account for and hold in trust property, profits, and benefits derived in winding up the LLC's business affairs and in using its property; the duty of care to avoid grossly negligent or reckless conduct while winding up the LLC;

and the duty to discharge these two aforementioned duties with good faith and fairness. It is eminently plausible that an LLC member violates these 180/15–3 fiduciary duties to such LLC by draining such entity of cash for his or her personal benefit while simultaneously leaving it a hollow shell without any funds to pay its lawful creditors. In other words, it is entirely plausible that the debtor LLC's property and profits were not held in trust for the benefit of winding up its affairs; the members receiving the distributions took no care, let alone minimally reasonable care, in winding up the affairs of the LLC in such a way that obligations that could have been satisfied were satisfied; and, perhaps, the members furthermore did not handle the LLC funds consistent with their obligations to discharge these fiduciary duties with fair dealing and good faith. For these reasons, then, a nexus between the above statute and Kennett and Hamilton's initiation and receipt of LLC-member distributions establishes the United States' basis for personal jurisdiction. This same factual basis and set of legal assertions in Count IV likewise state a claim upon which relief could be granted within the meaning of Federal Rule 12(b)(6).

The wrongful LLC distributions alleged in Count III are also legally tied to these same Count IV allegations, because if Kennett and Hamilton breached one of these Section 15–3 duties, as alleged, then they may be additionally liable under Count IV, which is based on the following law:

§ 25–35. Liability for unlawful distributions.

(a) A member of a member-managed company or a member or manager of a manager-managed company who votes for or assents to a distribution made in violation of Section 25–30, the articles of organization, or the operating agreement is personally liable to the company for the amount of the distribution that exceeds the amount that could have been distributed without violating Section 25–30, the articles of organization, or the operating agreement if it is established that the member or manager did not perform the member or manager's duties in compliance with Section 15–3.

(b) A member of a manager-managed company who knew a distribution was made in violation of Section 25–30, the articles of organization, or the operating agreement is personally liable to the company, but only to the extent that the distribution received by the member exceeded the amount that could have been properly paid under Section 25–30.

805 Ill. Comp. Stat. 180/25–35. "The amount of the distribution that exceeds the amount that could have been distributed without violating Section 25–30" is in turn determined with reference to the following provision:

§ 25–30. Limitations on distributions.

(a) A distribution may not be made if:

(1) the limited liability company would not be able to pay its debts as they become due in the ordinary course of business; or

(2) the company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the company were to be dissolved, wound up, and terminated at the time of the distribution, to satisfy the preferential rights upon dissolution, winding up, and termination of members whose preferential rights are superior to those receiving the distribution.

805 Ill. Comp. Stat. 180/25–30. The trustee, as representative of the estate of Teknek, LLC, can also step into the shoes of the debtor enterprise and bring any and all causes of action held under the above provisions to the extent that the debtor's members violated the above restrictions.

11 U.S.C. § 323, § 541(a), & § 704(1)-(2). Essentially, what this Illinois statute says is that an LLC member may not cause a dividend or distribution to himself if such payment would leave the LLC practically or actually insolvent; otherwise, the member is liable to the LLC for the amount that exceeds the amount that could have properly been paid. The mere act of causing a substantial withdrawal of money from a limited liability company operating in the forum is a contact, the effects of which this law was designed to prevent.[8] For these reasons, then, a nexus between the above two statutory provisions and Kennett and Hamilton's initiation and receipt of LLC-member distributions exists, establishing the basis for specific personal jurisdiction. The same factual basis and set of legal assertions in Count III likewise state a claim upon which relief could be granted within the meaning of Federal Rule 12(b)(6).

 Kennett and Hamilton have cited a line of authority for the proposition that when personal jurisdiction is based on the mere fact that the tort became complete within the forum jurisdiction because an *economic* injury occurred there, then the plaintiff must also establish the defendant's intent to affect an economic interest in that particular forum: *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines,* 262 F.Supp.2d 898, 910–11 (N.D.Ill.2003), and *Celozzi v. Boot,* 2000 WL 1141568 (N.D.Ill. Aug. 11, 2000). *Interlease Aviation* and *Celozzi* in turn rely on *Stein v. Rio Parismina Lodge,* 296 Ill.App.3d 520, 231 Ill.Dec. 1, 695 N.E.2d 518 (1998), and *Arthur Young & Co. v. Bremer,* 197 Ill.App.3d 30, 35–38, 44–45, 143 Ill.Dec. 736, 554 N.E.2d 671 (1990), which demonstrate that the rule on which Kennett and Hamilton rely is actually a rule derived from the inapplicable Illinois long-arm statute, not on the minimum-contacts tests derived from the federal Due Process Clause interpretations. Under the federal constitutional standards, "[t]he notion of 'foreseeability' relevant in determining whether minimum contacts exist is not the foreseeability of causing injury in another state but rather the foreseeability that 'the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there.'" *FMC Corp. v. Varonos,* 892 F.2d 1308, 1313 (7th Cir.1990); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

And, even if this intent-to-inflict-economic-harm rule were a Fifth Amendment extension of the *Calder* extraterritorial "effects" test, the defendants' argument has at least two weaknesses. First, they base their argument on the assumption that sole-bankruptcy-creditor SDI is the only possible economic interest Kennett and Hamilton could have possibly intended to affect by the transfer of assets, and SDI's economic interests are in California, not Illinois. But, under the Fifth Amendment national-contacts analysis, the test would be modified to require an intent to affect a U.S. interest, and SDI is indeed such a financial interest. Second, SDI is not the only entity feeling the effects of the member distributions: we are here in this Chapter 7 case because the Illinois debtor Teknek, LLC has no valuable tangible as-

---

**8.** Kennett and Hamilton get hung up on the red herring the trustee threw into the complaint: that their 2003 distributions to themselves exceeded the amount of ordinary income reported for the year. Kennett and Hamilton explain that the return shows that the excess came from a pre-existing capital fund. Under the governing substantive law, it is irrelevant whether a member distribution consists of current revenue, a reserve or other accumulated fund, or any combination thereof.

sets. The resulting causes of action under Counts III and IV are in fact legal claims that the Chapter 7 debtor itself held against its members until they became property of the estate administered by the trustee. 11 U.S.C. § 323, § 541(a), & § 704(1)-(2). Finally, it is eminently reasonable to infer that knowingly causing and receiving a $722,967 member distribution from an American LLC show an intent to affect the economic interests of both the U.S. LLC and its U.S. creditors.

### 3. Traditional Notions of Fair Play and Substantial Justice

■■■■■ Once specific personal jurisdiction is appropriate on the basis of minimum contacts with respect to the United States as a whole, as it is here, a defendant may defeat jurisdiction only if the assertion of jurisdiction offends traditional notions of fair play and substantial justice. *YKK USA v. Baron,* 976 F.Supp. 743, 745–47 (N.D.Ill.1997); *e.g., Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 113–21, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (Brennan, J., concurring). The defendant who loses under the first prong has a heightened burden if he wants to prevail on the second, because "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174; *see also Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines,* 262 F.Supp.2d 898, 909 (N.D.Ill. 2003). Thus, the burden switches to the defendant on the second prong. *Luv n' care, Ltd. v. Insta–Mix,* 438 F.3d 465, 473 (5th Cir.2006); *Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC),* 341 B.R. 872, 888–90 (Bankr.N.D.Ill.2006). The following considerations are evaluated:

Thus courts in "appropriate case[s]" may evaluate "the burden on the defen-

dant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S., at 292, 100 S.Ct., at 564.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *see also Asahi Metal Industry Co.,* 480 U.S. at 113–16, 107 S.Ct. 1026; *Interlease Aviation Investors II,* 262 F.Supp.2d at 909. *But see Schwinn Plan Comm. v. AFS Cycle & Co. (In re Schwinn Bicycle Co.),* 192 B.R. 461, 475 (Bankr.N.D.Ill. 1996) (also including factors more appropriate under *forum non conveniens* analysis, including the existence of and conflicts with the law of alternative foreign forums).

■■■ As in any typical personal jurisdiction controversy, a burden is placed on the defendants to appear and defend in some distant forum, while a U.S. plaintiff would suffer hardship if personal jurisdiction were lacking, because he would likewise be required to travel afar to some remote jurisdiction to try to obtain effective relief against the defendants. Thus, these opposing interests tend to cancel one another out in any sort of balancing of the above criteria. In this case, it is admittedly burdensome for Kennett and Hamilton to come from Scotland to defend in the United States, while it would be burdensome for the Chapter 7 trustee to go to Scotland to try to obtain relief against Kennett and Hamilton. In this instance, it could be said that the balance tips in favor of the trustee, because the individual defendants reached out to the United States by voluntarily forming a business entity here and conducting it profitably; re-

moved the funds and other assets from the entity, leaving it without anything other than $73 to pay legitimate creditors in the same forum; and then voluntarily caused the debtor to invoke the protections of Chapter 7 of the U.S. Bankruptcy Code by signing and filing the requisite bankruptcy petition on behalf of the debtor. Furthermore, it is a stretch to claim that it is fundamentally unfair for the United States to assert jurisdiction over the defendants because their distance from the forum is too far only when they are being sued but not when engaging in other activities that are advantageous to them. Moreover, the trustee is located here because Kennett and Hamilton caused the debtor to file the bankruptcy case here, and even bankruptcy-estate creditor SDI has not reached out to Scotland other than to assert legal rights having their origin in Teknek, LLC's conduct in the United States. The Scottish defendants' likelihood of being disadvantaged by culture shock is also reduced by the fact that this is an English-speaking country using a common-law legal system. *Cf. Federalpha Steel LLC Creditors Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 889 (Bankr.N.D.Ill.2006) (same conclusion for Canadian defendant). The whole concept of a burden is not what it was when the doctrine was born, either, due to advances in modern communication, travel, and the use of local counsel. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines*, 262 F.Supp.2d 898, 911 (N.D.Ill.2003) (citing *Birnberg v. Milk St. Residential Associates Ltd. Partnership*, 2003 WL 151929 (N.D.Ill. Jan. 21, 2003)). The Supreme Court also recognized that the weight of the defendant's burden may be reduced by the availability of venue-change provisions. *Burger King Corp.*, 471 U.S. at 477, 483–

84, 105 S.Ct. 2174. The defendant's burden within and across the U.S. court system, at least to the extent it is based on an inappropriate or tenuously linked venue, could be accommodated through bankruptcy provisions. 28 U.S.C. § 1412; Fed. R. Bankr.Pro. 1014(a) & 7087.

Moreover, the forum's interest in adjudicating the dispute, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies all favor a finding that the United States' exercise of personal jurisdiction in this matter is fundamentally fair. First of all, the only noninsider creditor of this bankruptcy estate holds a significant judgment issued by the same sovereign here asserting personal jurisdiction for a violation of its own patent laws. The United States has an additional interest in the resolution of this adversary proceeding and related bankruptcy case inasmuch as the U.S. Bankruptcy Code is also the sovereign's law, and the defendants may have removed money and assets from the U.S. debtor in anticipation of invoking the bankruptcy laws. The adjustment of the debtor-creditor relationship is a federal concern, 28 U.S.C. § 157(b)(2)(O), and one of the policies underlying the substantive law in this area is the notion that a single federal forum ought to have the power to bring before it all matters with respect to a single bankruptcy debtor so that all such matters may be handled more efficiently, consistently, and expeditiously than if they were scattered throughout various courts. 28 U.S.C. § 1334(a) & (e) (exclusive federal jurisdiction over bankruptcy case and property of the bankruptcy estate); 11 U.S.C. § 362(a) (automatic stay of numerous proceedings against the debtor in other forums); *see also In re Earle Industries*, 72 B.R. 131, 134 (Bankr.E.D.Pa.1987)

("[C]ourts must be mindful that … current section 1334(a), (b) also represent[s] a studied Congressional decision to broaden bankruptcy jurisdiction in order to bring into one forum all matters related to the bankruptcy case 'so as to facilitate the administration of bankruptcy cases.'"); *Federalpha Steel LLC Creditors Trust,* 341 B.R. at 889. To the contrary, a finding that this forum lacks personal jurisdiction would cause a splintering of the litigation in this bankruptcy case, with the trustee trying part of the fraudulent-transfer action here against the Kenham and Tekena USA defendants and the other part involving the same original set of facts in the United Kingdom against Kennett and Hamilton. A U.S. Bankruptcy Court also has a strong federal interest in hearing "core" bankruptcy matters, *see In re Federalpha Steel LLC,* 341 B.R. at 889, and at a minimum, the Count I fraudulent-transfer action would be a core proceeding as a result of 11 U.S.C. § 544(b), *see* 28 U.S.C. § 157(b)(2)(H); *In re Mankin,* 823 F.2d 1296, 1299–1300 (9th Cir.1987).

Additionally, Illinois has an interest in the outcome of the present adversary proceeding. The Chapter 7 debtor Teknek, LLC was physically situated in Illinois, conducted its business from that forum, and was formed under its limited-liability-company laws. Kennett and Hamilton, as members, left this Illinois interest without assets to pay its creditors as declared in the Chapter 7 petition. In this same adversary proceeding, the alleged § 550(a) subsequent-transferee defendants with whom Kennett and Hamilton continued the new U.S. distributorship agreements from Teknek Manufacturing—Kenham, LLC and Tekena USA, LLC—share Teknek, LLC's characteristics.[9] Counts I through

IV against Kennett and Hamilton, detailed more completely above, each ultimately depend on Illinois statutes and common law (though each one is encompassed by bankruptcy jurisdiction through 11 U.S.C. § 541(a) or § 544(b)). A federal court located in Illinois is situated to address these Illinois interests as part of the collective federal proceeding that is intended under the bankruptcy law (while, by comparison, a court in the United Kingdom would be remote from the Illinois forum, the Illinois debtor, and the Illinois law governing it). To the extent that a Californian business interest was harmed financially, is unable to collect on the judgment compensating for the harm, and is thus a creditor in this Chapter 7 case, there exists a Californian interest in the outcome of this adversary proceeding against Kennett and Hamilton as well.

The United States forum, the interstate judicial system, and financial concerns in two of the several states all have an interest in seeing that their laws, their insolvency procedures, or their financial stakes have some impact on the collective bankruptcy proceeding against Kennett and Hamilton. Though Kennett and Hamilton would need to make a compelling case, the additional "fair play" considerations weigh in the opposite direction and make the trustee's assertion that this federal forum may exercise personal jurisdiction over the movants even more powerful.

**B. Motion to Dismiss on the Basis of the *Forum Non Conveniens* Doctrine**

 Anytime an action is commenced before a federal court and a foreign country is a better forum for the suit

---

9. That is, they are physically situated in Illinois, conduct their business from that forum, and were formed under its limited-liability-company laws. Kennett and Hamilton are the only members of Kenham, LLC, and one of their foreign "Teknek" entities holds the distributorship license for Tekena USA, LLC's operation.

because the oppression of the defendant far outweighs the convenience of the plaintiff, the defendant may move for dismissal under the doctrine of *forum non conveniens*, even if both personal and subject-matter jurisdiction exist. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 262–63, 70 L.Ed.2d 419 (1981). Dismissal is supposed to be the exception and not the rule in cases such as the one at bar, since there is a presumption in favor of a U.S. plaintiff's federal-court home-forum choice. *Piper Aircraft Co.*, 102 S.Ct. at 265–66; *Kamel v. Hill–Rom Co.*, 108 F.3d 799, 803 (7th Cir.1997); *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2nd Cir. 2001). "The defendant bears the burden of proof on all elements of the motion...." *Bank of Credit & Commerce Int'l*, 273 F.3d at 246. The decision whether or not to dismiss a case under this doctrine involves a two-part inquiry.

### 1. The Availability of an Adequate Alternative Forum

■ A defendant moving for dismissal must first be able to show that there is an adequate alternative forum with jurisdiction. *Kamel v. Hill–Rom Co.*, 108 F.3d 799, 802–03 (7th Cir.1997). The proposed adequate alternative forum in the present situation is the U.K. insolvency proceeding for Teknek Electronics, Ltd., a foreign company with essentially the same ownership as the Chapter 7 debtor. After creditor SDI obtained its patent-infringement judgment against both the Chapter 7 debtor and Teknek Electronics, Ltd. in Scotland, SDI filed a civil action in the Court of Session against the latter defendant in February 2005 in an attempt to collect the judgment overseas. Teknek Electronics, Ltd. nevertheless ended up the subject of an insolvency petition filed on May 26, 2005, pursuant to the United Kingdom's Insolvency Act of 1986. Kennett and Hamilton contend that this insolvency petition is not only an adequate alternative forum for the trustee's present claims against them but also a source of potentially inconsistent factual findings for this suit.[10]

■ While the parties have become locked in the complex question of whether a U.K. insolvency proceeding for a foreign company would encompass claims that both an affiliated U.S. company and its bankruptcy trustee hold against the overlapping equity security holders (and have done so without analyzing a single provision of foreign law), the proper inquiry is really much more straightforward, as it is conceivable that some other less specialized proceeding would be legally sufficient for bringing claims against Kennett and Hamilton. The proper inquiry requires a showing of both the availability and adequacy of the forum. An alternative forum is available if the **defendant** is amenable to

---

**10.** To the extent that Teknek Electronics, Ltd. may have some type of transferee liability under § 550(a) of the Code relating to successive fraudulent transfers of the present Chapter 7 debtor's assets (as opposed to fraudulent transfers of *its own assets in Scotland*), the present adversary proceeding could not possibly result in any type of inconsistent factual findings that will harm it in any way, since it is a nonparty. Under the law of collateral estoppel, a nonparty in prior litigation may, using "offensive nonmutual issue preclusion," take advantage in subsequent litigation of a federal court's earlier findings on specific issues that were actually litigated to the disadvantage of the common party. *Syverson v. International Business Machines Corp.*, 461 F.3d 1147, 1153–55 (9th Cir.2006). A federal court's resolution of specific issues may never be used against someone who was not a party to prior litigation. *Id.* The ultimate resolution of the instant adversary proceeding would either help or not harm in any future litigation against Teknek Electronics, Ltd. in the United States.

service of process in the foreign jurisdiction. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 265 & n. 22, 70 L.Ed.2d 419 (1981). *But see Kamel v. Hill–Rom Co.,* 108 F.3d 799, 803 (7th Cir. 1997) (stating in dicta that availability requires that "all parties are amenable to process and are within the [foreign] forum's jurisdiction," apparently even the plaintiff). "An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Kamel v. Hill–Rom Co.,* 108 F.3d 799, 803 (7th Cir.1997). The adequacy "standard does not require that the alternative forum provide the exact remedy sought from the domestic court." *Exter Shipping Ltd. v. Kilakos,* 310 F.Supp.2d 1301, 1320 (N.D.Ga.2004).

The parties did not really focus on U.K. courts of general subject matter jurisdiction (analogous to most state trial courts in the United States) or the concept of general personal jurisdiction in those courts, instead traveling down the more conceptually difficult corporate-affiliate-insolvency path. Because Kennett and Hamilton are both citizens and domiciliaries of the United Kingdom, it would seem plausible that certain courts of that jurisdiction would have something like general personal jurisdiction and could hear any and all causes of action against them, regardless of where or under what law they arose. *See generally Exter Shipping Ltd. v. Kilakos,* 310 F.Supp.2d 1301, 1321 (N.D.Ga.2004) ("The general rule controlling personal jurisdiction in the European Union (EU) is that persons domiciled in an EU state must be sued in that state.") (citing the Civil Judgments and Jurisdiction Act, 1982 (amended 2001), ch. 27 (Eng.)); *compare Kamel,* 108 F.3d at 804 (under federal law, recognizing "the maxim that the defendant's home forum always has an interest in providing a forum for redress for injuries caused by one of its citizens"). Considering the fact

that the U.S. legal system is rooted in the British legal system, we can assume that were the trustee to sue Kennett and Hamilton in the United Kingdom, at least some appropriate remedies would be available, including money damages against that forum's citizens. *Cf. Exter Shipping Ltd. v. Kilakos,* 310 F.Supp.2d 1301, 1322 (N.D.Ga.2004) (finding, as a result of possible compensatory damages, "that the diminished likelihood of a punitive damages award does not render the United Kingdom courts' remedy insufficient").

In spite of the less-than-complete record, Kennett and Hamilton are entitled to the benefit of the doubt on this one; the United Kingdom would provide an adequate alternative forum. To say that another forum is available and adequate says nothing about what law should apply, what forum is convenient or efficient, or whether a controversy is merely of local interest to that forum, which brings us to the next set of considerations.

### 2. The Balancing of Private and Public Factors

The Court must next determine whether a balancing test weighs in favor of dismissal after considering both private and public/systemic factors. Generally speaking, "the party moving to dismiss for *forum non conveniens* [bears] the burden of making a 'clear showing' of facts that either '(1) establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Ito v. Tokio Marine & Fire Ins. Co.,* 166 Fed.Appx. 932, 934 (9th Cir.2006) (quoting *Miskow v. Boeing Co.,* 664 F.2d 205, 208 (9th Cir. 1981)); *see also Kamel,* 108 F.3d at 802.

The private-interest considerations include the availability of compulsory process to obtain the presence of unwilling witnesses, the costs of obtaining the attendance of willing witnesses, the ease of access to sources of proof and the ability to view any relevant premises, and the overall convenience of the chosen forum to each party. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 267–68, 70 L.Ed.2d 419 (1981). The primary public/systemic factors include the strength of another country's interest in having localized controversies decided at home; the ease of trying a diversity case in a forum at home with the substantive law, or, alternatively, the difficulty in applying either foreign law or domestic choice-of-law rules; and court congestion. *Kamel v. Hill–Rom Co.,* 108 F.3d 799, 803 (7th Cir.1997).

Kennett and Hamilton make the sensational assertion that the law of Scotland would apply to Counts I through IV, since "the Northern District of Illinois has no interest at all in this litigation." To the contrary, only Illinois law could possibly apply regardless of whether one uses the most-significant-relationship test, the significant-contacts test, the governmental-interests test, or other choice-of-law rules. Counts I through IV on their face are counts brought pursuant to Illinois law, which makes sense considering the factual bases for these claims. The Chapter 7 debtor Teknek, LLC was physically situated in Illinois, conducted its business from that forum, and was formed under its limited-liability-company laws. Kennett and Hamilton, as members, left this Illinois interest without assets to pay its U.S. creditors, as declared in the Chapter 7 petition, in spite of laws governing the windup of an LLC. (The additional subsequent-transferee defendants to whom Kennett and Hamilton extended continuing

U.S. distributorship agreements from Teknek Manufacturing share the first three characteristics.) Thus, Counts I through IV against Kennett and Hamilton each ultimately depend on what the law of Illinois (brought within bankruptcy jurisdiction through 11 U.S.C. § 541(a) or § 544(b)) mandates with respect to how they handled the assets of an Illinois limited liability company operating in Illinois. A federal court located in Illinois is situated to address these Illinois interests as part of the collective federal proceeding intended under the U.S. bankruptcy law (while, by comparison, a court in the United Kingdom would be remote from and unfamiliar with the Illinois forum, the Illinois debtor, and the Illinois law sources governing both). Furthermore, no "need to apply complex bodies of law" appears to exist for this Court in this case.

For these same exact reasons Illinois has an interest in this litigation, meaning that it is not merely a localized controversy to be decided in some other "home" forum. Additionally, the United States has an interest in liquidating insolvent U.S. debtors consistent with the policies in the U.S. Bankruptcy Code. Kennett and Hamilton base their arguments on an oversimplified description of the nature of this case focusing nearsightedly on the planning, control, operation, and decision making in which they engaged in Scotland and not on any of the ramifications of their behavior in other jurisdictions. This is not a case in which a U.S. bankruptcy-estate creditor had a business relationship with defendants centered in Scotland but decided to sue back in the United States under foreign law by means of diversity jurisdiction. Rather, the plaintiff has various claims in the nature of torts spanning multiple jurisdictions; the parties had no prior relationship; and the relevant planning occurred in Scotland while the execution and

action for this planning, in addition to its effects, occurred largely in the United States. Furthermore, this proceeding is not the type of "localized controversy" that can be said to have any "home" at all, let alone one requiring dismissal of the litigation in favor of some more obvious "home."

For similar reasons, factors relating to the ease of access to sources of proof and the ability to view relevant premises do not weigh heavily in one direction or the other. The Chapter 7 debtor's computer data, business documents, customers' correspondence, and bank-account records relating to money and assets transferred by either movement or documents of title are located in both countries. The other § 550(a) transferee defendants, Teknek America/Kenham, LLC (also owned by Kennett and Hamilton) and Tekena USA, LLC, are also physically present in this jurisdiction.

Kennett and Hamilton place great reliance on the fact that the "primary witnesses"—a certain accounting firm in the U.K. and one of their own Teknek Manufacturing accountants, Colin MacKillop—are located in the United Kingdom. They also contend that the firm would not be subject to the jurisdiction of the U.S. courts. While these considerations do favor the private interests of Kennett and Hamilton, it is not true that "all of the relevant witness are located in Scotland," as alleged. The plaintiff Chapter 7 trustee can designate witnesses just like any other party in any other suit. In this case, four of the individual defendants originally sued in addition to Kennett and Hamilton were those who at one time were the employees operating the judgment-proof Chapter 7 debtor and who now are the four members of § 550(a) transferee defendant Tekena USA, LLC. Thus, they have intimate knowledge concerning the assets, finances, and transfers of all these entities and,

more importantly, have actually operated all affiliated businesses in Illinois. Their traveling to the United Kingdom for trial at the trustee's behest would be every bit as inconvenient as the Scottish accountants traveling here for trial. Moreover, at least three of these four individuals were apparently never citizens or residents of the United Kingdom, so their amenability to process in the United Kingdom is at least questionable. In the end, the private-interest factors pertaining to willing and unwilling witnesses come out as a wash, as do the related considerations of the relative convenience of each forum for each party.

In conclusion, having failed to come close to establishing the second required element, Kennett and Hamilton have not overcome the presumption in favor of a U.S. plaintiff being able to sue in a U.S. federal court.

## ORDER

For the reasons stated in the Memorandum Opinion, the "Motion to Dismiss Amended Adversary Proceeding Against Sheila Hamilton and Jonathan Kennett for Lack of Personal Jurisdiction, Forum Non Conveniens and Failure to State a Claim Pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure" is hereby DENIED in all respects.